**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **NCLN20, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 02-1282C** |
| **v.** | ) | **(Judge Braden)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION FOR PARTIAL DISMISSAL

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss claims three and four of NCLN20, Inc.'s, (plaintiff or NCLN20), for lack of subject matter jurisdiction. These claims seek money damages, but NCLN20 has not certified and presented these claims to the contracting officer for resolution. In support of this motion, the United States relies upon NCLN20's amended complaint (Compl.), the exhibits attached thereto, and the following brief.

## DEFENDANT'S BRIEF

## STATEMENT OF THE ISSUE

Whether the Court should dismiss claims three and four of NCLN20's amended complaint for lack of subject matter jurisdiction, because NCLN20 has not complied with the mandatory exhaustion requirements of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 605(a)-(c), by failing to submit a claim to the contracting officer (CO) before initiating suit in this Court.

**STATEMENT OF THE CASE**

The facts that are pertinent to this motion for partial dismissal are not in dispute, for the purposes of this motion.[1] In 2001, NCLN20 entered into a requirements contract, # GS-05PO1-GCD-0009 (guard contract), with the United States to provide security services at Federal buildings in the state of Michigan. Compl. ¶ 21. A dispute arose under the contract when the United States alleged that NCLN20 repudiated the terms of the agreement, and the United States terminated NCLN20 for default on September 28, 2001. Compl. ¶ 47. Several years after this contract dispute first arose, in October 2006, NCLN20 submitted certified monetary claims to the CO, together with a request for final decision. Compl. ¶ 55. The CO issued a final decision on April 18, 2007. Compl. ¶ 56.

Now, NCLN20 has amended the complaint to include two new claims, claims that were not part of the original contract dispute. Instead, the monetary damages claims set forth in claims three and four of the amended complaint arise from another distinct contract, the Battle Creek, Michigan Mega Center Contract #GS05PO1GCD0005 (Mega Center Contract), awarded on June 16, 1999. Compl. ¶ 82. Specifically, NCLN20 claims that it is entitled to "anticipatory lost profits for at least $67,009.00; unpaid invoices of $97,775.00; and underpaid invoices of $75,143.00" for the "Mega Center Contract." Compl. ¶ 95. Although the amended complaint alleges that NCLN20 demanded payment upon certain invoices and requested an equitable adjustment on the Mega Center Contract, Compl. ¶¶ 86, 87, the amended complaint does not

[1] For purposes of this motion only, unless otherwise indicated, we accept as true the factual allegations as set forth in the complaint. However, in the event our motion is denied, we reserve the right to contest each and every factual allegation in the complaint.

allege, nor do the facts show, that NCLN20 ever submitted claims to the CO and requested a final decision. Accordingly, these claims must be dismissed.

## ARGUMENT

### I. Standard Of Review

The threshold question presented by every case brought before the Federal courts is whether the Court possesses jurisdiction to hear it. Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Federal courts are courts of limited jurisdiction which may exercise only those powers authorized by the Constitution and statutes. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). The Court of Federal Claims is a court of "exceedingly limited" statutory jurisdiction. Shelleman v. United States, 9 Cl. Ct. 452, 455 (1986). As such, "the jurisdiction of the Court of Federal Claims . . . is prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1461 (Fed. Cir. 1998) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)).

Subject matter jurisdiction may be challenged at any time by the parties, by the Court sua sponte, or on appeal. Booth v. United States, 990 F.2d 617, 620 (Fed. Cir. 1993) (citing United States v. Newport News Shipbuilding & Dry Dock Co., 993 F.2d 996, 998 n.1 (Fed. Cir. 1991)). Once challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002). A plaintiff must establish jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) (citing Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969)). If the defendant

challenges jurisdiction, however, the plaintiff cannot merely rely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction by a preponderance of the evidence. McNutt, 298 U.S. at 189; see also Taylor, 303 F.3d at 1359; Reynolds, 846 F.2d at 747; Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 404-405 (1994). The Court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985).

## II. The Court Should Dismiss Claims Three And Four Of NCLN20's Amended Complaint For Lack Of Subject Matter Jurisdiction Because NCLN20 Has Not Complied With The Mandatory Exhaustion Requirements Of The Contract Disputes Act, By Failing To Submit A Proper Claim To The Contracting Officer

This Court does not possess jurisdiction over NCLN20's third and fourth claims pursuant to the CDA. Although Congress has granted this Court jurisdiction to render judgment upon contract claims arising under the CDA,[2] 28 U.S.C. § 1491(a)(2), the CDA sets forth a detailed process that a contractor must comport with prior to initiating suit in this Court. See, 41 U.S.C. §§ 605(a)-(c). Specifically, "[a]ll claims by a contractor against the government relating to contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). As this Court has stated: "[T]o gain a jurisdictional foothold in this [C]ourt, a plaintiff must satisfy two fundamental requirements–it must submit a claim for money presently due and must obtain a 'final decision' on that claim, either actual or deemed." Witherington Constr. Corp. v. U.S., 45 Fed. Cl. 208, 211 (1999).

[2] As a preliminary matter, it should be noted that NCLN20 readily admit that the claims it has brought against the United States are pursuant to the CDA. Compl. ¶ 4 ("NCLN20's claims arise under § 10(a)(1),(3) of the [CDA].")

For the purposes of this jurisdictional requirement, a "claim" is a "written demand or written assertion by one of the contracting parties seeking as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising or relating to the contract." 48 C.F.R. § 2.101. Furthermore, a "claim" must be more than an undisputed invoice. Id. ("A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim."). Finally, if the claim exceeds $100,000 the contractor must also certify it in accordance with the CDA. 41 U.S.C. § 605(c)(1).

Here, with respect to claims three and four of the amended complaint, which arise under the Mega Center Contract, NCLN20 did not comport with the process required by the CDA to bring suit in this Court. Indeed, NCLN20 did nothing more than make a routine request for payment of outstanding invoices, which does not qualify as a "claim" under the CDA. See Declaration of Arthur Dobbs, which is attached as an exhibit to this motion.

Moreover, by NCLN20's admission, the fact that there were unpaid invoices was not disputed by the CO. Compl. ¶ 88. Furthermore, notwithstanding the fact that the claims pertaining to the Mega Center contract were never properly certified and submitted to the CO, NCLN20 also never made a request for, nor did it obtain, a final decision by the CO, a precondition to this Court's jurisdiction. Finally, although NCLN20's claim of unpaid and underpaid invoices exceeds $100,000, the amended complaint does not demonstrate, nor do the facts otherwise show, that any such claim was certified in accordance with the CDA.[3]

---

[3] If NCLN20's routine submission of invoices is deemed to be a claim cognizable pursuant to the CDA, these claims still must be dismissed, because the contracting officer's statement to NCLN20 that the Government did not owe NCLN20 any money upon the contract was made on January 30, 2002. Compl. ¶ 88. Thus, by NCLN20's own admission, the putative final decision of the contracting officer occurred nearly six years ago. However, it is well settled

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court dismiss NCLN20's third and fourth claims in its amended complaint for lack of subject matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

OF COUNSEL:

JOEL MALKIN
General Services Administration
Office of Regional Counsel
Chicago, IL

s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0383
Fax: (202) 353-7988
Attorneys for Defendant

DATED: October 26, 2007

---

that a disappointed contractor must file its complaint within 12 months of the date it receives the contracting officer's final decision. See K&S Constr. v. United States, 35 Fed. Cl. 270 (1996); see also White Buffalo Constr., Inc. v. United States, 28 Fed. Cl. 145 (1992) (filing one day after the expiration of the 12 month period rendered the filing untimely).

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on October 26, 2007, a copy of the foregoing **"DEFENDANT'S MOTION FOR PARTIAL DISMISSAL"** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Douglas K. Mickle
Douglas K. Mickle

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NCLN20, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | No. 02-1282C |
| | ) | (Judge Braden) |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant | ) | |

**DECLARATION BY ARTHUR S. DOBBS**

I, Arthur S. Dobbs, make the following declaration in accordance with 28 U.S.C. § 1746. I am aware that this declaration will be used in the United States Court of Federal Claims, and that this declaration is the legal equivalent to a statement under oath. I have reviewed the amended complaint field by NCLN20 in this Court, and state the following:

1. I am a Contracting Officer dedicated to the Federal Protective Service (FPS), which is an organizational unit of the Bureau of Immigration and Custom Enforcement (BICE) within the U.S. Department of Homeland Security (DHS). As a series GS-1102 (Step 10) contract specialist with a $25 million contracting officer's warrant, I award and administer contracts for services at Federal facilities owned or supported by the Great Lakes Region of the U.S. General Services Administration (GSA) in the states of Illinois, Indiana, Wisconsin, Minnesota, Michigan and Ohio. I had been a contracting officer with GSA until FPS was transferred from GSA to the U.S. Department of Homeland Security on March 1, 2003 when DHS was created. I have awarded FPS security service contracts since 1996 when I transferred to my present position.

2. I was the primary Contracting Officer responsible for the contract for alarm monitoring and radio dispatch of the Battle Creek Mega Center, GS05P99GCD00001 contract (Mega Center contract). NCLN20 Inc. was the commercial firm who was awarded this contract, which was for alarm monitoring of certain Federal facilities in 18 states. My role as the contracting officer included the award of the contract and its administration during its two year term of performance, which was from October 1, 1999 through September 30, 2001.

3. During the final months of the term of the Mega Center contract, NCLN20 was asked to provide a Service Contract Act price adjustment proposal to possibly extend the Mega Center contract for an additional six months. NCLN20's proposal was too expensive to be accepted. Accordingly, the staffing of the Mega Center continued until September 30, 2001. During this time frame, NCLN20 was awarded a second contract, GS05P01GCD0009, to provide security guard services at GSA owned or GSA controlled facilities in Michigan. Contract GS05P01GCD0009 (Michigan guard contract) was terminated for default (T4D) on September 28, 2001.

4. I decided to withhold payment to NCLN20 on the Mega Center contract in order to allow the Government to recover against NCLN20 excess reprocurement costs NCLN20 might owe the Government after the T4D. Therefore I withheld the final month of payment (September, 2001) on the Mega Center contract. I finally authorized that payment on July 18, 2007, when the Michigan guard contract's T4D was converted to a termination for convenience (T4C).

5. I have reviewed the contract files pertaining to the Mega Center contract and state that I have not received a certified claim as set forth in the Contracts Disputes Act with respect to

invoices pertaining to the Mega Center, either unpaid or underpaid. Furthermore, I have not been asked to render a final decision on any claim pertaining to these invoices. All that NCLN20 sent me was a routine request for payment in the amount of $97,775.00 for the final month of performance (September, 2001) upon the Mega Center contract shortly after that contract ended. At the moment I am uncertain how I replied to that request, but I believe that I explained that the payments were frozen until any possible re-procurement costs upon the terminated Michigan guard contract was settled. A few months later NCLN20 sent spreadsheets to explain the underpayment of invoices during January through July, 2001.

6. Finally, the outstanding Mega Center invoice NCLN20 mentions in its amended complaint and I mention in paragraph 5 are not in dispute. In fact, we have requested that NCLN20 submit certain information using prescribed directions so DHS can make payment upon them, but to date, I have not received such invoices.

Arthur S Dobbs
s/ Arthur S. Dobbs
Arthur S. Dobbs
Contracting Officer
DHS, Federal Protective Service

Executed this 26 day of October, 2007.