IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NCLN20, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | No. 02-1282C |
| | ) | (Judge Braden) |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant | ) | |

**DECLARATION BY ARTHUR S. DOBBS**

I, Arthur S. Dobbs, make the following declaration in accordance with 28 U.S.C. § 1746. I am aware that this declaration will be used in the United States Court of Federal Claims, and that this declaration is the legal equivalent to a statement under oath. I have reviewed the amended complaint field by NCLN20 in this Court, and state the following:

1. I am a Contracting Officer dedicated to the Federal Protective Service (FPS), which is an organizational unit of the Bureau of Immigration and Custom Enforcement (BICE) within the U.S. Department of Homeland Security (DHS). As a series GS-1102 (Step 10) contract specialist with a $25 million contracting officer's warrant, I award and administer contracts for services at Federal facilities owned or supported by the Great Lakes Region of the U.S. General Services Administration (GSA) in the states of Illinois, Indiana, Wisconsin, Minnesota, Michigan and Ohio. I had been a contracting officer with GSA until FPS was transferred from GSA to the U.S. Department of Homeland Security on March 1, 2003 when DHS was created. I have awarded FPS security service contracts since 1996 when I transferred to my present position.

2. I was the primary Contracting Officer responsible for the contract for alarm monitoring and radio dispatch of the Battle Creek Mega Center, GS05P99GCD00001 contract (Mega Center contract). NCLN20 Inc. was the commercial firm who was awarded this contract, which was for alarm monitoring of certain Federal facilities in 18 states. My role as the contracting officer included the award of the contract and its administration during its two year term of performance, which was from October 1, 1999 through September 30, 2001.

3. During the final months of the term of the Mega Center contract, NCLN20 was asked to provide a Service Contract Act price adjustment proposal to possibly extend the Mega Center contract for an additional six months. NCLN20's proposal was too expensive to be accepted. Accordingly, the staffing of the Mega Center continued until September 30, 2001. During this time frame, NCLN20 was awarded a second contract, GS05P01GCD0009, to provide security guard services at GSA owned or GSA controlled facilities in Michigan. Contract GS05P01GCD0009 (Michigan guard contract) was terminated for default (T4D) on September 28, 2001.

4. I decided to withhold payment to NCLN20 on the Mega Center contract in order to allow the Government to recover against NCLN20 excess reprocurement costs NCLN20 might owe the Government after the T4D. Therefore I withheld the final month of payment (September, 2001) on the Mega Center contract. I finally authorized that payment on July 18, 2007, when the Michigan guard contract's T4D was converted to a termination for convenience (T4C).

5. I have reviewed the contract files pertaining to the Mega Center contract and state that I have not received a certified claim as set forth in the Contracts Disputes Act with respect to

invoices pertaining to the Mega Center, either unpaid or underpaid. Furthermore, I have not been asked to render a final decision on any claim pertaining to these invoices. All that NCLN20 sent me was a routine request for payment in the amount of $97,775.00 for the final month of performance (September, 2001) upon the Mega Center contract shortly after that contract ended. At the moment I am uncertain how I replied to that request, but I believe that I explained that the payments were frozen until any possible re-procurement costs upon the terminated Michigan guard contract was settled. A few months later NCLN20 sent spreadsheets to explain the underpayment of invoices during January through July, 2001.

6. Finally, the outstanding Mega Center invoice NCLN20 mentions in its amended complaint and I mention in paragraph 5 are not in dispute. In fact, we have requested that NCLN20 submit certain information using prescribed directions so DHS can make payment upon them, but to date, I have not received such invoices.

Arthur S. Dobbs

s/ Arthur S. Dobbs
Arthur S. Dobbs
Contracting Officer
DHS, Federal Protective Service

Executed this 26 day of October, 2007.