**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

NCLN20, INC.

Plaintiff,

vs.

THE UNITED STATES OF AMERICA,

Defendant.

No. 02-1282C
JDG: Susan G. Braden

**PLAINTIFF'S RESPONSE AND OPPOSING BRIEF TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

Now comes Plaintiff, NCLN20, Inc., pursuant to RCFC 7.2(c), (d) and 10(c) and the 11/26/07 Order granting Plaintiff leave until 1/11/08 to file its Response to Defendant's Motion to Dismiss, and files its Response, Opposing Brief, and Request to take Judicial Notice (Notice attached hereto as Exhibit D) and emphatically DENIES that: **(A) it "has not certified and presented [Claims Three and Four] these claims to the Contracting Officer for resolution", and (B) it "has not complied with the mandatory exhaustion requirements of *** 41 USC § 605(a)-(c), by failing to submit a claim to the contracting officer (CO) before initiating suit in this Court", because said allegations comprise erroneous legal conclusions and are not true.** In support thereof, Plaintiff NCLN20, Inc. relies on the following paragraphs 1 through 6 hereof.

1. As alleged in and shown by the Appendix of Exhibits to Plaintiff NCLN20, Inc.'s First Amended Complaint served 9/27/07, Common Allegations, ¶s 2, 3, 4, 5(a), 52, 53, 55, 56, 57, 58, 66(o), 69(b); Third Claim for Relief, ¶s 80, 92, 96; and Fourth Claim for Relief, ¶s 98 and 103, this Court has subject matter jurisdiction over Plaintiff NCLN20, Inc. Third and Fourth Claims for Relief. Also see pages 2, 3, 15, 16, 26, 28 and 35 through 45 of NCLN20's First Amended Complaint. Specifically, Plaintiff's First Amended Complaint alleges and establishes that this Court has subject matter jurisdiction over Plaintiff's Third and Fourth Claims for Relief under 28 USC § 1491(a)(1), (2); 41 USC §§ 605(c)(5);

609(a)(1), (3). Further, Plaintiff NCLN20, Inc. specifically DENIES each of the allegations contained in the unsworn and unverified "Defendant's Brief—Statement of the Issue", "Statement of the Case" at pages 1 through 6, and the Declaration by Arthur S. Dobbs dated 10/26/07, to wit:

(a) Defendant's Statement of the Case at pages 2 and 3 mischaracterizes Plaintiff's Amended Complaint, including ¶s 47, 55, 56, 82, 86 and 87 and falsely and erroneously allege that

(i) **"NCLN20 has not complied with the mandatory exhaustion requirements of the Contract Disputes Act of 1978 (CDA), 41 USC § 605(a)-(c), by failing to submit a claim to the contracting officer (CO) before initiating suit in this Court."** Id. page 1;

(ii) **"[t]he amended complaint does not allege nor do the facts show that NCLN20 ever submitted claims to the CO and requested a final decision."** Id. pages 2 and 3.

(iii) **"NCLN20 did nothing more than make a routine request for payment of outstanding invoices…" (Id. at page 5) *** "the fact that they were unpaid invoices was not disputed by the CO."** (Id. at page 5). **"The claims pertaining to the Mega Center contract were never properly certified and submitted to the CO. NCLN20 also never made a request for, nor did it obtain, a final decision by the CO,** …" Id. at page 5.

(iv) **"The putative final decision of the contracting officer occurred nearly six years ago."** Id. at page 5, Note 3. See ¶ 88 of First Amended Complaint; Exh 58, Abercrombie/Pinnau e-mail. .

(b) Alternatively, Plaintiff NCLN20 denies the following enumerated parts of the Declaration by Arthur S. Dobbs dated 10/26/07, because they constitute erroneous legal conclusions, and are materially untrue and irrelevant:

(i) ¶3. **"Contract GS05PO1GCD0009 (Michigan Guard Contract) was terminated for default (T4D) on September 28, 2001."**

(ii) ¶4. **"I finally authorized that payment on July 18, 2007, when the Michigan guard contract's T4D was converted to a termination for convenience (T4C)"** (Emphasis added).

(iii) ¶5. **"I have reviewed the contract files pertaining to the Mega Center contract and state that I have not received a certified claim as set forth in the Contracts Dispute Act with respect to invoices pertaining to the Mega Center, either unpaid or underpaid. Furthermore, I have not been asked to render a final decision on any claim pertaining to these invoices. All that NCLN20 sent me was a routine request for payment in the amount of $97,775.00 for the final month of performance (September, 2001) upon the Mega Center contract shortly after that contract ended."** (Emphasis added).

(iv) ¶6. "**The outstanding Mega Center invoices NCLN20 mentions in its amended complaint and I mention in paragraph 5 are not in dispute.**" (Emphasis added).

2. Alternatively, this Court on 9/21/07 had subject matter jurisdiction over Plaintiff's Third and Fourth Bad Faith and Anticipatory Breaches of Contract Claims on a deemed-denied basis under 41 USC § 605(c)(5) before Plaintiff's Amended Complaint was filed, because CO Dobbs failed to issue a final decision on NCLN20's Mega Center claims in a timely manner. See NCLN20's requests for final decision of 12/1/05 and 10/26/06, Exhibits 84, 3A. See United Partition Systems, Inc. v U.S., 59 Fed Cl 627, 634-641 (2004). Accordingly, sixty (60) days after CO Dobbs receipt of Plaintiff NCLN20's claims (60 days after 9/12/05—i.e., 11/11/05, and 60 days after 11/1/06—i.e., 12/21/06), Plaintiff NCLN20 could properly treat its monetary claims as DENIED by CO Dobbs pursuant to 41 USC § 605 (c)(5), which brought its Third and Fourth monetary claims for relief within the jurisdiction of this Court by serving its 1st Amended Complaint on 9/21/07. See Dkt #71; United Partition Systems, Inc., supra at 634-640. A deemed denial under 41 USC § 605(c)(5) is not subject to the same 12-month limitations period as a CO's written final decision. See Pathman Constr. Co. v U.S., 817 F.2d 1573 (Fed Cir 1987); Schickler v U.S., 54 Fed Cl 264, 271 (2002) (a deemed denial does not start the clock).

3. This Court has subject matter jurisdiction over Plaintiff NCLN20's Third and Fourth monetary claims for relief because NCLN20 properly submitted to CO Dobbs its certified monetary claims on 8/31/05, 12/1/05 and 10/27/06 and requested final decisions thereon by CO Dobbs. See First Amended Complaint, ¶s 53, 55, 56, 57, 69(b).

4. NCLN20's entitlement to the Mega Center Contract claims for underpaid and unpaid invoices were disputed by the USA because the USA denied liability for them by its refusals to pay NCLN20's non-routine claims 10/16/01 (Karim Abercrombie) REA (Exhibits L, Schedule 12) for $75,142.20 and 10/16/01 (Stephen Jones) for final payment of invoices 3462, 3463 and 3464 for $38,785.98, $38,785.98 and $20,203.33 and REA for wage and benefit invoices of 9/20/01 (Karim Abercrombie), respectively (Exhibits K, Schedule 11), and by the USA's issuance of CO Dobbs T4C on 4/18/07. First Amended Complaint ¶s 86-88, Exhs 82, 55, 56, 57. Thus, NCLN20's certified Third and Fourth

Claims for Relief were properly before CO Dobbs on 8/31/05 as supplemented on 12/1/05 and 10/26/06 and, therefore, they are properly before this Court. See 41 USC § 605(a), (c)(1), (6), (7); 48 CFR §§ 33.202; 33.206; 33.207; NCLN20's certified REA 8/31/05, as supplemented on 12/1/05 and as certified, restated, supplemented and amended on 10/26/06, which were denied by CO Dobbs' Decision of 4/18/07 and Determination of 4/13/07 at pages 7 of 9 and 8 of 9 ("**I rejected the claimed damages,**") ("**the Battle Creek Mega Center** [claims], **continues to be on hold.**"), Exhs 82, 83. First Amended Complaint, ¶s 53, 55-57; Dkt #s 55, 67.

5. NCLN20's certified REA of 8/31/05 properly notified CO Dobbs of the basis for its claims and it quantified the amounts. See Exhibit 3 seeking $4,904,074 in damages. Id. at pp 4, 14. On 12/1/05, NCLN20's counsel wrote CO Dobbs a letter in response to letters of ACO Roger Pinnau of 10/7/05 and 11/21/05 (which sought information and documentation "**quantifying its alleged** [in its REA] **damages**") and therein delineated NCLN20's Mega Center Contract damages as including "**Cost of Money Damages $390,392**". "**On a separate contract number out of Battle Creek, Michigan**" (Id. at pp 9-10) and "**Actual Damages costs of Battle Creek Contract--$306,419.**" (Id. at p 10 and the breakdown of damages attached thereto), Exh 84, Dkt #55. Further, on 10/27/06, NCLN20's counsel submitted to CO Dobbs NCLN20's Request for Final Decision and its certified, restated, supplemented and amended Claims for Monetary Damages of $4,164,518.00, including the under-billing invoices of $20,203.33, $38,785.98 and $38,785.98 (¶ 20(a), (d)); lost profits of $67,009.00 and unpaid invoices of $97,778.00 and $75,143.00 (¶s 20(a), (c), 21 and Prayer (A)). See, also ¶s 1(d), 8(a), (b); Exhs 55, 57, 58; Exhibit Binder II, Exh L; Exhibit Binder I, Exh K, L, N and O, of which copies were filed with this Court on 9/27/07, Dkt #s 64, 71. CO Dobbs had actual or constructive knowledge of the facts and events underscoring these claims. Id.

6. Plaintiff NCLN20's Response to Defendant's Motion for Partial Dismissal is based upon Plaintiff's First Amended Complaint and the Exhibits incorporated herein under RCFC 10(c), Plaintiff NCLN20's attached Request for Judicial Notice, Opposing Brief, and whatever arguments may be presented at the hearing of this Motion.

**PLAINTIFF NCLN20, INC,'S OPPOSING BRIEF IN SUPPORT OF ITS RESPONSE TO DEFENDANT USA'S MOTION FOR PARTIAL DISMISSAL AND BRIEF**

Plaintiff, NCLN20, Inc., hereby submits its Opposing Brief pursuant to RCFC 5.2 (a)(2), in support of its Response to Defendant USA's Motion for Partial Dismissal and Brief.

**COUNTER STATEMENT OF QUESTIONS INVOLVED**

Plaintiff, NCLN20 submits the following Counter Statement of Questions Involved pursuant to RCFC 5.2 due to its dissatisfaction with the USA's "Statement of the Issue".

A) Whether Plaintiff NCLN20's 10/01 Demands for Money Damages constituted "claim(s)" under 28 USC § 1491(a)(1); 41 USC § 605(a), (b); and/or 48 C.F.R. § 2.101?

B) Whether Plaintiff NCLN20's Mega Center claims asserted in Counts Third and Fourth of its First Amended Complaint were "routine" and "not in dispute" at the times they were submitted to Contracting Officer Arthur S. Dobbs?

C) Whether a "Final Decision" been rendered by the Mega Center's Contracting Officer Arthur S. Dobbs as to NCLN20's Mega Center Monetary Claims contained in Counts Third and Fourth of Plaintiff NCLN20's First Amended Complaint?

D) Assuming CO Dobbs' Final Decision of 4/18/07 is not interpreted as a Final Decision on Plaintiff NCLN20's Third and Fourth Claims asserted in its First Amended Complaint, a "final decision" thereon should be "deemed" to have been made on those claims pursuant to 41 USC § 605(c)(5)?

**PLAINTIFF NCLN20, INC.'S COUNTER-STATEMENT OF THE CASE**

By virtue of the inaccuracies and deficiencies in Defendant USA's Statement of the Case, Plaintiff NCLN20 hereby submits its Counter Statement of the Case.

The following are uncontroverted jurisdictional facts alleged in Plaintiff NCLN20's First Amended Complaint, Dkt #76. Defendant USA has conceded that, for purposes of its Motion for Partial Dismissal, it "accept(s) as true the factual allegations as set forth in the [first amended] complaint", USA Brief, page 2, note 1 and that the "facts that are pertinent to this motion for partial dismissal are not in dispute". (Emphasis added).

On 8/23/01, NCLN20 was invited and asked by GSA/FPS/CO Dobbs to submit a Cost Proposal for an additional 6-month extension of the Mega Center Contract (#GS05P99GCD0001[sic]). On 8/31/01, NCLN20 submitted its Cost Proposal for Contract #GS05P99GCD0005 pursuant to GSA/FPS invitation and request (a copy of this Cost Proposal is annexed hereto in **Binder 2, Exhibit N**. First Amended Complaint ¶ 84(a).

On 9/19/01, CO Dobbs of the GSA-Great Lakes Region 5, FPS, wrote NCLN20/ Jones a letter regarding GSA Contract #GS05P99 GCD0005 for the Performance of Alarm Monitoring and Operation of Public Safety-Related Telecommunications and Security Systems at the Federal Protective Services Mega Center in Battle Creek, Michigan ("Mega Center Contract"), informing them that he was rejecting their Cost Proposal dated 8/31/01, but referred them to FAR 52.217-8 Option to Extend Services of the Contract (8/89) and requested a proposal by 9/21/01. (A copy of Dobbs 9/19/01 letter is annexed in **Binder 3, Exhibit 54**.) Id. ¶ 85.

On 9/20/01, NCLN20 submitted to CO Dobbs a Request for Equitable Adjustment for wage and benefit increases for 6 months extension from 10/1/01 through 3/31/02. (A copy of Karim Abercrombie letter dated 9/20/01 to CO Dobbs is annexed hereto in **Binder 4, Exhibit 89**). Id. ¶ 86.

On 10/16/01, Jones wrote CO Dobbs regarding Dobbs' decision not to extend Contracts #s GS05P99 GCD 0001/5, demanding payment for unpaid invoices #s 3462-64 for services performed for 9/01 of $75,142.20. (A copy of Jones demand for payment with attachments are annexed in **Binder 3, Exhibit 56**.) Also, on 10/16/01, Karim Abercrombie wrote CO Dobbs regarding underpayments of $75,142.20 as reflected on NCLN20's attached accounting. A copy of Abercrombie letter of 10/16/01 with attachments, is annexed in **Binder 3, Exhibit 57**.) Id. . ¶ 87.

On 1/30/02, Pinnau sent Karim Abercrombie an e-mail stating that he wasn't aware of NCLN20's underbilling, and claimed that the GSA didn't owe NCLN20 "**anything on the Contract, due to the [claimed] excess reprocurement costs/charges incurred by NCLN20, due to NCLN20's Termination for Default on another GSA FPS R5 contract (for Michigan guard services) last year.**" On 1/30/02, Karim Abercrombie responded

and stated that NCLN20 had not been paid for services rendered and that NCLN20 had submitted an REA claim for monies owed for unpaid invoices and a result of six months of underbilling. Id. . ¶ 88.

On 8/31/05, as supplemented on 12/1/05, NCLN20 submitted certified (41 USC § 605(c)(1)) monetary claims for equitable adjustments, including anticipatory lost profits damages claims for bad faith and anticipatory breaches of contracts for $4,904,074.00 to CO Dobbs, together with a request for a final decision. (Genuine copies are annexed in **Binder 3, Exhibit 3** and **Binder 4, Exhibit 84**.) Id. ¶ 53.

On 10/27/06, NCLN20, through its counsel, submitted to CO Dobbs and Doris White, a DCAA auditor, its Certified [41 USC §605(c)(1)], Restated, Supplemented and Amended Claims for Monetary Relief of $5,051,198.00 dated 10/26/06 ("Amended Monetary Claims"), together with a Request for Final Decision. (Genuine copies of said claims and request for final decision with exhibits and schedules are annexed in **Binder 3, Pages i through v & 1 through 26** and **Binder 3, Exhibit 3A**.) Id. ¶ 55.

CO Dobbs, by Finding dated 4/13/07 and a final decision (Determination) dated 4/18/07, pursuant to the Contract Disputes Act of 1978 (41 USC § 601-613) converted his T4D dated 9/28/01 to a T4C (solely for the purpose of attempting to limit the USA's liability on NCLN20's monetary damages claims, ¶s 54, 56 above), denying NCLN20's REA Monetary Claims and denying *sub silento* NCLN20's Amended Monetary Claims. (**Binder 4, Exhibit 82** and **Binder 4, Exhibit 83**). Id. ¶ 56.

By letter dated 7/18/07 to NCLN20's counsel of record, CO Dobbs confirmed the USA/CO Dobbs' prior (4/18/07) withholding of payments due NCLN20 under the Battle Creek, Michigan Mega Center Contract #GS05PO1GCD0005 ("Mega Center Contract") and therein conceded, admitted and confirmed that: (a) his T4C dated 4/18/07 waived and barred the USA prior baseless re-procurement costs claim for $1,657,800.00 against NCLN20; and (b) the USA/CO Dobbs prior wrongful withholding of payments on NCLN20's previously completed Contract #GS05PO1GCD0005 of $97,775.13 and $75,142.20 had been or would be released *ab initio* 4/16/07, as stated hereinafter in NCLN20's THIRD CLAIM FOR RELIEF. Id. ¶ 57.

By its subject First Amended Complaint to Recover Monetary Damages for Bad Faith, Arbitrary, Capricious, Malicious and Anticipatory Breaches and Wrongful Termination of Contracts and Other Relief, through counsel and filed in this Court, NCLN20, Inc. timely appealed CO Dobbs' final decision dated 4/18/07. Id. ¶ 58.

In Count THIRD, Plaintiff NCLN20 characterizes its claim as "Monetary Damages for USA's Bad Faith, Arbitrary, Capricious, Malicious, Material and Total Anticipatory Breaches and Wrongful Termination of Mega Center Contract", seeking an award of compensatory damages, including anticipatory lost profits for no less than $67,009.00, unpaid invoices of $97,775.00 and underpaid invoices of $75,143.00, plus pre-judgment interest and attorneys fees, costs and expenses. Id., pp 35, 41.

In Count FOURTH, Plaintiff NCLN20 characterizes its claims as "Monetary Damages for USA's *** Anticipatory Breaches of the Mega Center Contract, Implied Duties of Good Faith and Fair Dealing *** of the Mega Center Contract", seeking compensatory damages of no less than $239,927.00, plus pre-judgment interest and attorneys fees, costs and expenses. Id. pp 42, 44.

On 11/26/07, Defendant USA filed a RCFC 12(b)(1) Motion for Partial Dismissal of Counts Third and Fourth of Plaintiff NCLN20's First Amended Complaint, supported by "NCLN20's Amended Complaint ***, the exhibits attached thereto and the following brief". Id. at page 1, and the Declaration of Arthur Dobbs. Id. at page 5.

Defendant USA contends in its Motion for Partial Dismissal and Brief that this Court lacks subject matter jurisdiction over claims Third and Fourth in Plaintiff NCLN20's First Amended Complaint and argues that these monetary claims should be dismissed because Plaintiff NCLN20 allegedly "has not complied with the mandatory exhaustion requirements of the Contract Disputes Act, by failing to submit a proper claim to the Contracting Officer" and that Plaintiff NCLN20 "has not certified and presented these claims to the contracting officer for resolution." Motion for Partial Dismissal, page 1.

## ARGUMENT

## I. LEGAL STANDARDS FOR A RCFC 12(b)(1) MOTION TO DISMISS

On motions to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), **"[t]he Court must accept as true the facts alleged in the complaint and must construe such facts in the light most favorable to the pleader"**. Patton v United States, 64 Fed Cl 768, 773 (2005); Scheuer v Rhodes, 416 U.S. 232, 236 (1974) (**However, the material facts here, are NOT DISPUTED.**) Furthermore, dismissal of a complaint for lack of subject matter jurisdiction is without prejudice to re-filing the complaint in this Court once the defect is cured. Wheller v United States, 11 F.3d 156, 160 (Fed Cir 1993). Since the USA's motion hasn't challenged the truth of the jurisdictional facts alleged in Plaintiff NCLN20's First Amended Complaint, the Court may NOT consider evidence outside Plaintiff NCLN20's First Amended Complaint in evaluating and resolving the USA's Motion for Partial Dismissal.

For purposes of a motion to dismiss, all the exhibits and documents appended to Plaintiff NCLN20's First Amended Complaint are treated as part of the complaint in deciding whether its pleading sets forth legally sufficient jurisdictional facts. See People Natural Gas Co. v. Federal Power Comm., 127 F.2d 153 (App D.C. 1942), cert denied 316 U.S. 200 (1942); Accord, Flesch v. Eastern Pennsylvania Psychiatric Institute, 434 F. Supp 963 (E.D. Pa. 1977); RCFC 10(c).

By virtue of the USA's concession that the material facts are not disputed, the USA's challenge to Plaintiff NCLN20's First Amended Complaint focuses on pure questions of law. See Valentin v. Hos. Bella Vista, 254 F.3d 358, 362-63 (1st Cir 2001).

## II. THIS COURT SHOULD DENY THE USA's MOTION FOR PARTIAL DISMISSAL OF COUNTS THIRD AND FOURTH OF NCLN20's FIRST AMENDED COMPLAINT BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THESE CLAIMS ARISING UNDER THE CONTRACT DISPUTES ACT, 41 USC § 605 AND 28 USC § 1491 (a)(1)

### A) Plaintiff NCLN20's 10/01 Demands to CO Dobbs for monetary damages constituted "Claim(s)" under 28 USC § 1491 (a)(1) and 41 USC § 605(a), (b) and/or 48 C.F.R. § 2.101.

**"The United States Court of Federal Claims is a court of specific and limited jurisdiction."** United States v King, 395 U.S. 1, 3, 89 S.Ct 1501, 23 L.Ed.2d 52 (1969); American Maritime Trans., Inc. v United States, 870 F.2d 1559, 1563 (Fed Cir 1989). The Tucker Act grants this Court "**jurisdiction to render judgment upon any claim against the United States founded upon ... any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.**" 28 USC § 1491(a)(1) (2000). Furthermore, the Court "shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978 ... on which a decision of the contracting officer has been issued under [41 USC § 605 (2000)]." 28 USC § 1491(b). * * *

"**All claims by a contractor against the government [must] be in writing and shall be submitted to the contracting officer for a decision.**" 41 USC § 605(a). Contractor claims in excess of $100,000 must be certified as to accuracy by a duly authorized representative of the contractor. 41 USC § 605(b). *** The language in section 605(a) "**has been construed to require a 'final decision' on a claim by the contracting officer as a 'jurisdictional prerequisite' to further legal action.**" Ervin and Assocs. V United States, 44 Fed Cl 646, 653 (1999) (quoting *Sharman Company, Inc. v United States*, 2 F.3d 1564, 1568 (Fed Cir 1993)); see Paragon Energy Corp. v United States, 227 Ct. Cl 176, 645 F.2d 966, 967 (1981); see also Bath Iron Works Corp. v United States, 20 F.3d 1567, 1578-79 (Fed Cir 1994)." See Precision Pine & Timber, Inc. v U.S., 62 Fed. Cl 635, 641 (2004).

On 4/18/07, CO Dobbs issued his "Final Decision" with respect to each of Plaintiff NCLN20's two (2) contracts at issue. See First Amended Complaint, ¶s 53, 55-57, 84-88. CO Dobbs' "Final Decision" was in writing, stated the purported reasons for the decision of 4/18/07, informed Plaintiff NCLN20 of its right to appeal was furnished to Plaintiff NCLN20 and pre-dated the serving of NCLN20's First Amended Complaint on 9/27/07.

Dkt #s 67, 71. Thus, a final decision addressing the subject of Plaintiff NCLN20's Third and Fourth claims was issued in accordance with 41 USC § 605(a).

The USA contends that CO Dobbs' final decision of 4/18/07 is insufficient to confer jurisdiction over Plaintiff NCLN20's Third and Fourth claims on the Court. USA Motion/Brief, at pp 1-5. More specifically, the USA argues that "the amended complaint does not allege, nor do the facts show, that NCLN20 ever submitted a claim to the CO and requested a final decision." Id. at pp 2, 3. The USA further contends that CO Dobbs' final decision of 4/18/07 does not address NCLN20's "claim" because NCLN20's underpaid and unpaid invoices were "routine" and "not in dispute," when his final decision was issued. Id. at pp 1-5. The USA's arguments have been rejected by the U.S. Court of Appeals for the Federal Circuit, are contrary to the ordinary meaning of "claim," are unsupported by the legislative history of the Contract Disputes Act, and are belied by the language of the two Michigan Contracts, #GS05PO1GCD0009 and GS05P99GCD0005. First Amended Complaint, ¶s 2, 3, 5, 82-84. The Federal Circuit held in Reflectone Inc. v Dalton, 60 F.3d 1572, 1575-76 (Fed Cir 1995) that a non-routine submission from a contractor constitutes a "claim" regardless of whether it is preceded by a dispute. The assertion of damages resulting from a breach of a contract is NOT ROUTINE. See Precision Pine & Timber, supra at 642, citing Kentucky Bridge & Dam, Inc. v U.S., 42 Fed. Cl 501, 519 (1998). Thus, the USA's purported reliance on 48 C.F.R. § 2.101 and CO Dobbs' Declaration is misplaced. USA Brief, pp 4, 5.

The Contract Disputes Act does not define what constitutes a "claim". This Court evaluates contested claims "in terms of the regulations implementing the Act, the relevant contract language, and the facts of the case". Precision Pine & Timber, supra at 642. Assuming *arguendo* 48 C.F.R. § 2.101 governs the matter *sub judice*, it defines "claim" as:

> **"A written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract ... [2] A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. [3] The submission**

**may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time**." (Emphasis added)

The USA asserts that Plaintiff NCLN20's 10/01, 8/31/05 and 10/27/06 monetary claims for breaches of contract damages were not "in dispute", as purportedly required by the FAR definition of a "claim" and therefore did not constitute a final decision upon which a CDA claim could be based. USA Motion at page 5.

**"The starting point of statutory interpretation is the plain language of the statute."** Zoltek Corp. v U.S., 51 Fed. Cl 829, 834 (2002). 28 USC § 1491 grants this Court "jurisdiction to render judgment upon any *claim* by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978 ... on which a decision of the contracting officer has been issued under [41 USC § 605]." Neither the Tucker Act nor the CDA define the term "claim".

The Federal Circuit noted that "it is illogical to require a dispute before a demand for payment rightfully due can be a 'claim' because to have a dispute the contractor must first make a demand as a matter of right, i.e., a claim, that is then refused." Reflectone, supra at 1576.

The USA's contracting officer's final decision, assessed as a matter of right, NCLN20's claims for monetary damages for breach of contract. By demanding "something due or believed to be due," Dobbs' final decision of 4/18/07 assessed NCLN20's "claim". Reflectone, 60 F.3d at 1576; *see also Placeway*, 920 F/2d at 906.

**The CDA's Legislative History and Purposes Are Not Consistent With an "In Dispute" Requirement.**

"[N]either the CDA, its legislative history, nor the FAR, nor its history, suggests that a dispute must pre-date the contractor's submission of the claim to the CO when the claim is in the form of a non-routine demand as of right." Reflectone, 60 F.3d at 1576/ .

Additionally, the CDA's goal of "providing for the efficient and fair resolution of contract claims" conflicts with a pre-existing dispute requirement. Id. at 1580.

That is precisely the situation here. If Plaintiff NCLN20's claims were to be dismissed, the contracting officer would issue new final decisions assessing breach damages. The existence of a pre-existing dispute would clearly be satisfied. Plaintiff NCLN20 would then once again challenge the assessment of breach of contract damages. The CDA's goal of the fair and efficient resolution of claims, as well as the interests of judicial economy, would be undermined by such a result.

**The Contractual Language Does Not Impose an**
**"In Dispute" Requirement.**

The parties' written agreements in this case embodied and recognized the Court's jurisdiction granted by Congress to hear claims arising pursuant to the CDA. First Amended Complaint, ¶s 5, 82. The USA disputed the Court's jurisdiction, arguing that the NCLN20's actions did not meet the contractual definition of "claim". The USA, however, has incorrectly interpreted the contracts. Rather than limiting the Court's jurisdiction, the language of the contracts is consistent with the Court's interpretation of 28 USC § 1491(a) and the CDA.

Interpretation of the terms of a government contract is a matter of law. Fortec Constructors v United States, 760 F.2d 1288, 1291 (Fed. Cir 1985). The relevant language governing claims is found in FAR 52-233-1(c), Disputes of the contracts:

> **52.233-1 Disputes.**
> **As prescribed in 33.215, insert the following clause:**
> **Disputes (July 2002)**
>
> **"(a) This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613).**
> **(b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved under this clause.**
> **(c) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the Act until certified. A voucher, invoice, or other routine request for payment that is not in dispute when**

**submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.**
**(d)(1) A claim by the Contractor shall be made in writing and, unless otherwise stated in this contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision. A claim by the Government against the Contractor shall be subject to a written decision by the Contracting Officer.**
**(2)(i) The Contractor shall provide the certification specified in paragraph (d)(2)(iii) of this clause when submitting any claim exceeding $100,000.**
**(ii) The certification requirement does not apply to issues in controversy that have not been submitted as all or part of a claim.**
**(iii) The certification shall state as follows: "I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor."**
**(3) The certification may be executed by any person duly authorized to bind the Contractor with respect to the claim.**
**(e) For Contractor claims of $100,000 or less, the Contracting Officer must, if requested in writing by the Contractor, render a decision within 60 days of the request. For Contractor-certified claims over $100,000, the Contracting Officer must, within 60 days, decide the claim or notify the Contractor of the date by which the decision will be made."**

There is no "in dispute" requirement included in that definition.

In light of the terms' ordinary, unambiguous meanings and the parties' likely intent, Subsection (c) refers to *demands* for relief, as a legal right under the contract. Demands for relief as a legal right should be understood to include demands for damages resulting from breach of contract. Therefore, NCLN20's damage correspondence constituted written assertions of a legal right to damages pursuant to FAR 52.233-1(c).

The Michigan contracts expressly provide for a resolution of breach and damage issues. As such, NCLN20's written demands for breach damages arising under the contracts constituted a claim as defined in FAR 52.233-1(c). Compare 48 CFR §§ 33.202; 33.206; 33.207; 41 USC § 605(a), (c).

**B) Plaintiff NCLN20's Mega Center Claims asserted in Counts Third and Fourth of its First Amended Complaint were "non-routine" and were "in dispute" at the times they were submitted to CO Dobbs**

The USA argues that NCLN20's Mega Center breach of contract damages claims are "nothing more than a routine request for payment of outstanding invoices," which were "not in dispute and which do not qualify as a 'claim'." Motion at p 5.

In CO Dobbs' T4C of 4/18/07 and final decision, he determined that NCLN20 filed a **"request dated August 31, 2005 resulting in a Request for Equitable Adjustment based upon breach of contract damages *** Damages were divided into (1) anticipatory profits, (2) cost of money damages, actual damages and legal fees. *** I rejected the claimed damages."** Determination and Findings, p 7 of 9, Dkt #67. In his final decision of 4/18/07, CO Dobbs stated: "**This also is in response to your *** [REA] in the amount of $4,904,074.**" Id. CO Dobbs proceeded to deny NCLN20's breaches of contract monetary damages claims in their entirety. Id. NCLN20's claims of 10/01 unpaid and underpaid invoices, were encompassed as part of its Third and Fourth claims, which included NCLN20's requests and demands for payment of the invoices under breaches of contract theories, all consistent with relevant law of damages and its entitlement to compensatory damages that approximate performance of the contract. Miller v Robertson, 266 U.S. 243, 257 (1924).

The USA/CO Dobbs/ ACO Pinnau's conduct subsequent to 10/01 to 9/21/07 supports the conclusions that the USA had decided not to make payments to NCLN20 for its Third and Fourth claims for monetary damages and had denied liability therefor. First Amended Complaint s 56, 57, 88 (ACO Pinnau stated that the USA did not owe NCLN20 "anything" on the Mega Center Contract.). 93(a), (b) (The USA "repeatedly failing and refusing to pay NCLN20's billed invoices *** wrongfully and continuously withheld payments up to the filing of this Complaint), 95.

In sum, when viewed as true and correct and drawing all reasonable inferences against the USA, Plaintiff NCLN20's Mega Center claims asserted in Counts Third and

Fourth of its First Amended Complaint were "non-routine" and were "in dispute" at the times they were submitted to CO Dobbs. Hence, NCLN20's demands/requests for payment of its 10/01 invoices constituted CDA claims. See Solar Turbines, Inc. v U.S., 16 Cl.Ct 304 (1989); Precision Pine & Timber, supra at 641.

**C) A Final Decision had been rendered as to NCLN20's Mega Center Monetary Claims contained in the Third and Fourth Claims of the First Amended Complaint.**

As to the claims for monetary breaches of Mega Center Contract damages alleged in the Third and Fourth Counts of NCLN20's First Amended Complaint, the USA argues that "**NCLN20 has not certified and presented these claims to the contracting officer for resolution,**" (Motion, p 1) and that "**The amended complaint does not demonstrate nor do the facts otherwise show, that any such claim was certified in accordance with the CDA**" [footnote omitted]. Brief, p 5. These contentions are wholly without merit and are contradicted by the USA/CO Dobbs' and their of record counsel, Douglas Mickle's own admissions and acknowledgements of pleaded jurisdictional facts. See USA's Answer of 10/26/07, ¶s 3, 5(b), (e), 47, 52, 53, 56, 57, 69(b), Dkt # 72. See RCFC 8(d); Lipton Industries, Inc. v Ralston Purina Co., 620 F.2d 1024, 1030 (C.C. Pa 1982); Adams v Teck Comineco Alaska Inc.. 414 F. Supp.2d 925 (D. Alaska 2006) (Statements in answer are judicial admissions);; FRE 801 (d)(2)(D) (Attorney's judicial admissions); United States v Harris, 914 F.2d 927. 931 (7th Cir 1990); U.S. v Martin, 773 F.2d 579 (4th Cir 1985); U.S. v Johnson, 752 F.2d 206 (6th Cir 1985) (Attorney has authority to make judicial admissions relating to the purposes of an action); Carney v IRS (In Camera), 258 F.3d 415, 420 (5th Cir 2001) (Party cannot contradict earlier admission); C&H Commercial Contractors, Inc. v U.S., 35 Fed. Cl 245, 246 (Fed. Cl 1996) (Statements by CO admissible); Purgers v Sharrock, 33 F.3d 134 (2nd Cir 1994) (Statements made by counsel in footnote file in memorandum or law are admissions of party); Reid Bros. Logging Co v Ketchikon Pulp Co, 699 F.2d 1292 (9th Cir 1983) (Report admissible as admission of party); White Indus. V Cesana Aircraft Co., 611 F. Supp 1049 (W.D. Mo 1985) (Status Report constitutes admission under FRE 801(d)(2)(B) and 803(6)).

Arthur S. Dobbs was the designated Contracting Officer for Contract # GS05 P99GCD0001, merged into #GS05P99GCD0005 Dispatch Operator Services at Battle Creek, Michigan Mega Center, and GS05P01GCD0009 of the USA, Federal Protective Services Division, GSA Great Lakes Region. CO Dobbs signed the T4D of 9/28/01 and the T4C of 4/18/07. NCLN20's 1st Amended Complaint, ¶s 2, 3, 47, 57, 82; Binder 3, Exh 47; Binder 4, Exh 82, 83 and USA's judicial admissions set forth in its answer ¶s 3 ("Admits"), 53, 55, 56, 57. (Dkt #72.)

Further, in the USA's Answer to NCLN20's First Amended Complaint (#s 53, 55, 56 and 69(b) Dkt #72), the USA admitted NCLN20's jurisdictional allegations. Also see the Court's findings that "**On August 31, 2005, *** Plaintiff submitted a certified claim to the contracting officer seeking monetary relief.**" Order dated 10/3/05, Exh 2; and

> "**On October 3, 2007, the court ordered this case stayed pending a final decision by the contracting officer on Plaintiff's August 31, 2005 Request for Equitable Adjustment ('REA'). On April 24, 2007, the Government filed a status report stating that the contracting officer had reviewed Plaintiff's REA, and issued a Determinations and Findings regarding Plaintiff's claims on April 13, 2007. On April 18, 2007, a letter was sent to Plaintiff's counsel announcing the contracting officer's decision. Accordingly, the stay on this case is, hereby, listed.**" Order dated 5/9/07, Dkt #68.

Consequently, the USA and its counsel are judicially estopped from attempting to contradict, vary or impeach the USA's judicial admissions *via* its Motion for Partial Dismissal, Brief and Affidavit of CO Dobbs. Moreover, this Court shall judicially notice under FRE 201 NCLN20's submissions of its claims on 8/31/05, 12/1/05 and 10/26/06, Exhs 3, 84, 3A, Binder 3, which satisfy all procedural requirements of 41 USC § 605(c)(2), including being timely submitted to CO Dobbs and properly certified under 41 USC § 605(c)(1). See NCLN20's Request for Judicial Notice ("RFJN"). Each of NCLN20's monetary claims included certifications signed by Stephen Jones, President of NCLN20, Inc. on 8/31/05 and 10/26/06. The USA's Status Reports dated 12/5/05, 12/1/06, 6/5/06 and 4/23/07 all affirm and acknowledge NCLN20's jurisdictional factual allegations of ¶s 2, 3, 4, 5(a) and 52, 53, 55, 56, 58 and 69(b) of its First Amended Complaint filed herein on 9/21/07, Dkt #s 55, 58-61, 66-67. E.g., Defendant's Status Reports admit that:

(a) **"NCLN20 submitted a new REA to the contracting officer *** on August 31, 2005"** Status Report dated 4/23/07, Dkt # 67;

(b) **"In NCLN20's December 2005 letter to the contracting officer, NCLN20's counsel wrote that *** NCLN20's claim $4,904,073.00 damages were based upon anticipated profits and cost of money damages."** Status Report dated 4/23/07, Dkt #67;

(c) **"On or about November 1, 2006, the [FPS] received a supplemental REA from NCLN20. The FPS contracting officer [CO Dobbs] subsequently forwarded NCLN20's supplemented REA with supporting materials to DCAA for inclusion in DCAA's audit."** Status Report dated 4/23/07, Dkt # 67.

The USA, ACO Roger Pinnau and CO Dobbs and the USA's counsel of record variously admitted having received NCLN20's certified REA submitted to CO Dobbs on 8/31/05, as supplemented 12/1/05, and NCLN20's certified restated, supplemented and amended monetary claims submitted to CO Dobbs on 10/27/06. See 41 USC § 605(c); USA Status Report dated 4/23/07, pages 1, 2, Dkt #67; CO Dobbs Determination and Findings dated 4/13/07 at page 7, Exh 83; CO Dobbs letter dated 4/18/07 to NCLN20's counsel, first paragraph, Exh 82; CO Dobbs letter to NCLN20's counsel dated 7/18/07 first paragraph, the USA's Answer ¶s 52-57 to NCLN20's 1st Amended Complaint; ACO Pinnau's letter to Mr. Jones dated 10/7/05, Exh 51; Dkt #s 55, 64, 67.

In CO Dobbs Determination and Finding of 4/13/07, he acknowledged receipt of NCLN20's REA of 8/31/05 as including "Damages" for "**Cost of Money Damages**" and that he proceeded to deny the claims and "**rejected the claimed damages**". Id. at page 7 of 9, Exh 83; Dkt #67. NCLN20's "Cost of Money Damages" for $390,392.00 related to the Government's pulling money out of NCLN20's account out of the Battle Creek, Michigan Contract and actual damages costs of Battle Creek Contract of $306,419.00 of NCLN20's total monetary damages of $4,904,074.00 as claimed in its 8/31/05 REA. See Exhibits 84, 87, 56, 57.

Plaintiff's First Amended Complaint alleges and the exhibits incorporated therein establish that the USA disputed NCLN20's money claims for sums certain, as evidenced by CO Dobbs' denial of NCLN20's REA of 8/31/05 and 12/1/05 on 4/13/07 by issuance of his

Determination and Findings of 4/13/07, at page 7 of 9, Exh 83. See, also NCLN20's 10/16/01 submissions to CO Dobbs, Exhs 55-57, which establish and reflect that they are non-routine, were in dispute and were not resolved within a reasonable time. Compare FAR 52.233-1(c); Exhs 55-57; Solor Turbines, Inc. v U.S., 1989 U.S. Ct Cl LEXIS 15; 16 Ct Cl 304. In the event CO Dobbs' Decisions and Findings of 4/13/07 and 4/18/07 are not interpreted as a final decision on NCLN20's Mega Center Contract claims Third and Fourth, a decision should be "deemed" to have been made on these claims pursuant to 41 USC § 605(c)(5). CO Dobbs did not comply with § 605(c)(2) or (c)(3). See Argument D), infra at pages 20 and 21.

Plaintiff NCLN20's certified monetary damages claims, as supplemented and amended, constituted clear and unequivocal statements that gave CO Dobbs adequate notice of the basis and amounts so as to undertake a meaningful review of NCLN20's Mega Center Contract claims and thus complied in all respects with the Contract Disputes Act, 41 USC § 605. See Contract Cleaning Maintenance, Inc. v U.S., 811 F.2d 586, 592 (Fed Cir 1987) (citing Tecom Inc. v U.S., 732 F.2d 935, 936-37 (Fed Cir 1984).

**D) Assuming CO Dobbs' Final Decision of 4/18/07 is not interpreted as a Final Decision on Plaintiff NCLN20's Third and Fourth Claims asserted in its First Amended Complaint, a "final decision" thereon should be "deemed" to have been made on those claims pursuant to 41 USC 605(c)(5).**

Alternatively, this Court on 9/21/07 had subject matter jurisdiction over Plaintiff's Third and Fourth Bad Faith and Anticipatory Breaches of Contract Claims on a deemed-denied basis under 41 USC § 605(c)(5) before Plaintiff's Amended Complaint was filed, because CO Dobbs failed to issue a final decision on NCLN20's Mega Center claims in a timely manner. See NCLN20's requests for final decision of 12/1/05 and 10/26/06, Exhibits 84, 3A. See United Partition Systems, Inc. v U.S., 59 Fed Cl 627, 634-641 (2004). Accordingly, sixty (60) days after CO Dobbs receipt of Plaintiff NCLN20's claims (60 days after 9/12/05—i.e., 11/11/05, and 60 days after 11/1/06—i.e., 12/21/06), Plaintiff NCLN20 could and did properly treat its monetary claims as DENIED by CO Dobbs pursuant to 41

USC § 605 (c)(5), which brought its Third and Fourth monetary claims for relief within the jurisdiction of this Court by filing its 1st Amended Complaint on 9/27/07. See Dkt #71; United Partition Systems, Inc., supra at 634-640. A deemed denial under 41 USC § 605(c)(5) is not subject to the same 12-month limitations period as a CO's written final decision. See Pathman Constr. Co. v U.S., 817 F.2d 1573 (Fed Cir 1987); Schickler v U.S., 54 Fed Cl 264, 271 (2002) (a deemed denial does not start the clock).

**E) NCLN20's Third and Fourth Claims asserted in its First Amended Complaint are not barred by the six-year statute of limitations, 28 USC § 2501.**

In a footnote to its Brief, the USA argues that "the putative final decision of the contracting officer occurred nearly six years ago"; that a disappointed contractor must file its complaint within 12 months of the date it receives the contracting officer's final decision" and therefore "these claims still must be dismissed." Motion Brief, pp 5-6.

RCFC 8(c) provides that the affirmative defense of statute of limitations "shall be set forth affirmatively" in the party's "pleading". See Harris v Secretary, U.S. Dept. of Veterans Affairs, 126 F.3d 339, 343-345 (D.C. Cir 1997) (failure to claim statute of limitations in answer waived defense). Here, NCLN20 served its First Amended Complaint on 9/21/07. NCLN20 first made requests/ demands for the underpaid/ unpaid invoices on 10/16/01. First Amended Complaint, ¶ 87. NCLN20 continued to press its claims with CO Dobbs up to 9/21/07. Id., ¶s 88, 92(a), (b). The USA/CO Dobbs notified NCLN20 of its purported claim of excess re-procurement costs on 9/28/01. Id. The USA argues that ACO Pinnau's denial of liability on 1/30/02 constituted a final decision. Motion/Brief at p 5, footnote. However, NCLN20 didn't submit its monetary claims to CO Dobbs until 8/31/05. Id. ¶s 53, 55, 56, 57. CO Dobbs denied these claims on 4/18/07, Id., and continued the USA purported offset against NCLN20's bank accounts through 9/21/07. Id. at ¶s 57, 87, 88. Consequently, NCLN20 wasn't entitled to initiate an action on its Third and Fourth Claims until on or after 4/18/07. The six-year statute of limitations (28 USC § 2501) contained in the Tucker Act does not apply, since the CDA governs all suits based on the CDA, 41 USC § 609(a)(3). Under the CDA, NCLN20 had until on or after 4/18/08 in which to file its First

Amended Complaint. See 41 USC § 609(a)(3); Kasler/Continental Heller/Forvin Colnon v U.S., 9 Cl.Ct 187 (1985) (the 12-month statute of limitations does not begin to run until the contractor receives the final decision). See Pathman Const. Co., Inc. v U.S., 817 F.2d 1573 (Fed Cir 1987). Since the USA contends that CO Dobbs never rendered a final decision with respect to NCLN20's Third and Fourth claims, Motion/Brief pp 1, 5, then the 12-month statute of limitations would not commence to run until CO Dobbs actually rendered a written final decision. Id.

Consequently, NCLN20's allegations in its First Amended Complaint irrefutably show the existence of this Court's jurisdiction. First Amended Complaint, ¶s 2, 3, 4, 5(b), 47, 53, 55-57, 69(b). See Witherington Const. Corp. v U.S., 45 Fed. Cl 208, 212-213 (1999).

**F) Plaintiff NCLN20's Objections to the Court's consideration of the Dobbs Declaration in evaluating and deciding the USA's Motion for Partial Dismissal**

Pursuant to FRE 103(1), 104(a), Plaintiff NCLN20 hereby objects to the Court's consideration of the Declaration of CO Dobbs in evaluating and deciding the USA's Motion for Partial Dismissal on the grounds that:

1. The USA has conceded that the facts pertinent to its Motion for Partial Dismissal are not in dispute; Brief at p 2;

2. The USA concedes that, for purposes of its Motion, it accepts as true the factual allegations set forth in NCLN20's First Amended Complaint. Brief, p 2 at Note 1;

3. The USA does not rely on Dobbs' Declaration to support its Motion. Motion at p 1; and

4. The USA's Motion only raises pure questions of law.

Therefore, Dobbs' Declaration which comprises erroneous legal conclusions, is irrelevant and inadmissible and should be disregarded.

## CONCLUSION AND RELIEF SOUGHT

For all of the foregoing reasons, Plaintiff NCLN20 respectfully prays:

A) That the USA's Motion for Partial Dismissal be DENIED;

B) Alternatively, that this Court treat its Third and Fourth Claims as DENIED by CO Dobbs under 41 USC § 605(c)(5) and find and conclude that it has subject matter jurisdiction over Plaintiff NCLN20's Third and Fourth claims for relief asserted in its First Amended Complaint served 9/21/07, Dkt # 71;

C) Alternatively, that this Court act in CO Dobbs' official stead and consider and review *de novo* Plaintiff NCLN20's monetary Third and Fourth claims on their merits under 41 USC § 605(c)(5) and the rationale of McDonnell Douglas Corp v U.S., 37 Fed Cl 285, 288, 295 (1997); Durable Metal Products, Inc. v U.S., 21 Cl Ct 41 (1990);

D) That this Court judicially notice the First Amended Complaint and all Exhibits incorporated therein pursuant to RCFC 10(c) and FRE 201(a), (b), (d), (e) as enumerated in Plaintiff NCLN20's attached Request for Judicial Notice of Adjudicative Facts;

E) That this Court disregard the Defendant USA's unsworn Brief and the Declaration of Arthur S. Dobbs dated 10/26/07 or issue an order striking them from the records and files of this action. Alternative, should the Court decide to consider Dobbs Declaration, then Plaintiff NCLN20 requests that this Court consider the attached Affidavit of Stephen Jones, Exhibit C.

Respectfully Submitted By,

s/ Clarence B. Tucker, Sr.
**CLARENCE B. TUCKER, SR. (P-40703)**
Attorney of Record for Plaintiff NCLN20, Inc.
Ford Building
615 Griswold - Suite 1210
Detroit, MI 48226
(313) 230-7892
Fax: (313) 230-7896
**Email: ctucker@tuckerandhughespllc.com**

Dated: 1/11/2008

**CERTIFICATE OF SERVICE**

I, Clarence B. Tucker, Sr., hereby certify that on the 11th day of January, 2008, I electronically filed **1.) Plaintiff, NCLN20, Inc.'s Response and Opposing Brief to Defendant's Motion for Partial Dismissal; and 2.) Certificate of Service** with the Clerk of the Court and with Attorney of Record, **Douglas K. Mickle, Esq.**, using the ECF system.

s/ Clarence B. Tucker, Sr.

**CLARENCE B. TUCKER, SR. (P-40703)**
615 Griswold - Suite 1210
Detroit, MI 48226
(313) 230-7892
Fax: (313) 230-7896
Email: ctucker@tuckerandhughespllc.com

# INDEX OF EXHIBITS

| EXHIBIT | TITLE |
|---|---|
| A | CO Arthur Dobbs Letter dated 7/18/07 to Clarence B. Tucker, Sr., Esq. |
| B | 5/10/07 Transcript of Proceedings in this Case (NCLN20, Inc. vs. USA, #02-1282) Pages 1-17 |
| C | Affidavit of Stephen Jones dated 1/9/08 in Support of Plaintiff NCLN20, Inc.'s Response to Defendant's Motion for Partial Dismissal |
| D | Plaintiff NCLN20, Inc.'s Request for Judicial Notice of Evidentiary Exhibits Incorporated in Plaintiff NCLN20, Inc.'s First Amended Complaint by RCFC 10(c) in Support of Plaintiff NCLN20, Inc.'s Response to Defendant's Motion for Partial Dismissal |

# EXHIBIT A

**CO ARTHUR DOBBS LETTER DATED 7/18/07 TO CLARENCE B. TUCKER, SR., ESQ.**

Attachment to
October 22, 2007 Letter

Federal Protective Service
U.S. Department of Homeland Security
230 South Dearborn, Room 3540
Chicago, IL 60604

U.S. Immigration and Customs Enforcement

July 18, 2007

Mr. Clarence B. Tucker, SR., PLLC
615 Griswold Street – Suite 920
Detroit, Michigan 48226

THRU: Mr. Douglas K. Mickle, Esq.
U.S. Department of Justice
1100 L Street, Rm. 4062
Washington DC 20005

Dear Mr. Tucker:

This concerns NCLN20's Request for Equitable Adjustment (REA) regarding the termination of the Michigan Security Guard Contract GS05P01GCD0001 and the withholding of payments on the completed contract GS05P99GCD0009 for the staffing of the Battle Creek MI Mega Center.

This letter addresses the close out of the expired Mega Center Contract and does not address claims pertinent to the terminated Michigan Security Guard Contract. The withholding of funds on the Mega Center Contract was due to the termination for default (T4D) dated September 28, 2001 of the Michigan Security Guard Contract. NCLN20 was liable for re-procurement costs on the Michigan Security Guard Contract until April 18, 2007, when the T4D was changed to a Termination for Convenience of the Government (T4C).

Please complete the enclosed Release of Claims for the Mega Center contract. On this document you can note exceptions taken for amounts owed. NCLN20 is required to submit new invoices which bear a DUNS number, TIN number, ACT number, electronic funds transfer info, contract number, current address and date. Sign and return to me so we can process these invoices for payment.

Desk Telephone 312.353-5003
E-mail Arthur.S.Dobbs@dhs.gov

Sincerely,

ARTHUR S. DOBBS

COPY

# EXHIBIT B

**5/10/07 TRANSCRIPT OF PROCEEDING IN THIS CASE**
**(NCLN20, INC. VS. USA, #02-1282)**
**PAGES 1-17**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NCLN20, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 01-1282C |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Thursday,
May 10, 2007

Live Tape

(The following transcript was transcribed from a digital recording provided by U.S. Court of Federal Claims to Heritage Reporting Corporation on May 10, 2007.)

APPEARANCES:

For the Plaintiff:

CLARENCE TUCKER, Esquire

For the Defendant:

DOUG MICKLE, Esquire
U.S. Department of Justice
Washington, D.C.

Also for the Defendant:

JOEL DAVID MALKIN, Esquire
U.S. General Services Administration

P R O C E E D I N G S

(2:02 p.m.)

THE CLERK: Good afternoon. This is Matt Spangler, Judge Braden's law clerk. I am here with Judge Braden. I would like to go ahead and get started.

If each person on the line could speak their name and the party they represent. We are having this call digitally recorded.

MR. TUCKER: This is Clarence Tucker, and I represent the Plaintiff, NCLN20.

MR. MICKLE: And I'm Doug Mickle, and I am with the Department of Justice representing the United States.

MR. MALKIN: Joel David Malkin, Assistant Regional Counsel with the United States General Services Administration.

THE COURT: Good afternoon. It's Judge Braden.

I have your status report and I see that we finally heard from the CO. I guess the first thing I need to figure out is what is Plaintiff's intent.

MR. TUCKER: Your Honor, Plaintiff is in the process, number one, of assessing the finding and decision of the CO. We have never, to our knowledge

in this case, there have never been detailed findings, so that we got those for the first time.

So we're assessing those findings, and we're assessing the impact of those findings on the case in general in terms of our amended complaint or our supplemental complaint, and then the assessment of the legal effects of the CO's decision on our various complaints and the work that we must do to say file our amended complaint.

In addition, we are trying to make a determination, once we do that, of whatever additional pretrial discovery would be necessary, what effect it would have on the existing or pending motions for summary judgment, and you know, pretty much we need to do that in order to, I think, assess procedurally what kind of scheduling we'd be looking at once the amended complaint is filed.

THE COURT: Well, the case was filed in 2002. Now, I realize it's not -- part of our problem is the prior counsel was not convinced that the matter had to go to the CO before a complaint could be filed, but we solved that problem, and the government has offered you how much now? Forty thousand on a $4 million claim?

MR. TUCKER: I think it was 46, somewhere in

that range, yes, Your Honor.

THE COURT: Okay. And you talked to the Justice Department about possibly coming up with some type of settlement that may take into account their additional costs for trial, et cetera, in moving this forward?

MR. TUCKER: Your Honor, in our various status reports, we had requested of the government at what point would we engage in a good faith discussion, even though I don't think that was in the Court's order. It was one of the --

THE COURT: Well, I wouldn't expect to have to order you to do that.

MR. TUCKER: -- things I think you put in the transcript.

Pardon?

THE COURT: I wouldn't expect to have to order you and government to do that. I mean, you're mature litigants.

MR. TUCKER: That's correct, Your Honor, but that has not been accomplished, and we have made a invitation for that to happen, but it hasn't happened.

MR. MICKLE: But it couldn't have happened until we finally got the CO's decision --

THE COURT: Well, you have it now.

MR. MICKLE: -- was completed, and we have it now, and the present complaint before the Court, as Your Honor pointed out, I think, back in 2004, was for a T for D, or T for C conversion, no damages.

So as the current complaint stands, I think this suit is mood, so either we have to have an amended complaint seeking, I guess, the wrongful conversion of the termination for default or the termination for convenience -- I guess that would be the theory -- seeking and alleging that it was somehow done in bad faith to entitle NCLN20 to lost profits for the initial year of the contract. I guess that's the theory. I'm assuming that's the theory.

MR. TUCKER: I'm sorry, who is speaking?

MR. MICKLE: Oh, I'm sorry. This is Doug Mickle.

MR. TUCKER: Hey, Doug. How are you doing? Okay.

MR. MICKLE: But I'm willing to do that. I'm also willing to see if we want to quickly -- you know, once I hear from Mr. Tucker, if he's going to amend the complaint, I don't even have a problem, Your Honor, if we quickly went over to an ADR judge to try to work this out, but expeditiously because, as Your Honor pointed out, this has been on the --

THE COURT: I mean, I don't want it hanging on my docket.

MR. MICKLE: No, I understand, Your Honor.

MR. TUCKER: Your Honor, as new counsel on board, you know, we think that there are things that -- first of all, Your Honor, which the Court has probably has not seen, but we filed a very substantial claim for damages.

THE COURT: With the CO?

MR. TUCKER: Pardon?

THE COURT: With the CO.

MR. TUCKER: With the CO. It consisted of probably four volumes of notebooks.

THE COURT: Okay.

MR. TUCKER: It was a very extensive filing, and one of the things that we are somewhat set back by is that the government only audited, in effect, the so-called termination for convenience costs. We sent an expert from a consulting firm to California to coordinate with the government in doing their audit, which came late after -- which was conducted, I think, in maybe a day or half a day, and they did not audit any of the lost profit damages, which was a substantial portion of our claim.

I would note to the Court that on October 7,

2005, there was a letter sent to Mr. Jones, the president of NCLN20, written by Mr. Roger R. Pinnault, contracting officer.

If the Court would just permit me briefly, the middle paragraph says, "If NCLN20 is claiming damages not otherwise specified in the form, please add them to the form in such as way as to clearly identify, quantify, explain and provide documentation of those additional damages, including, but not limited to, alleged lost profit or bad faith."

Rodderd Crawforth, who was a former partner with this major CPA firm and now has his own consulting firm, and is nationally recognized, he went to California. He asked the auditor point blank, "Are you going to audit our claims for lost profits? The answer was, "We have not been instructed to do that."

So we are perplexed at why the government did not undertake to do that.

THE COURT: Well, that may be a basis for an appeal to me that you want to add or a point you might want to make. You've got a Justice Department lawyer, though, I think, who, from what I can see, has been very responsible in this matter. Your prior counsel was a very difficult person to work with, the Court found.

MR. TUCKER: And we reviewed the transcripts and we could do nothing but agree with the Court.

THE COURT: So I think you've got somebody reasonable to work with. You know, I'm not opposed to ADR, but it seems to me that you all ought to be able to find a way of resolving this matter.

Now, with a caveat. I don't know anything about this company, and I don't know whether they have been profitable or not, but it seems to me that that's something the government is going to -- would be relevant to them to know. Have they ongoing been a profitable firm if you're really looking for some compensation for that first year by way of lost profits?

If they have not been, then it seems to me you're going to have a difficult hoe to row with me.

MR. TUCKER: Your Honor, the company has been successful. They have been profitable.

THE COURT: All right. Well, I've just giving you some clues. I don't know a thing about the company.

MR. TUCKER: Yes. I mean, the company has been an ongoing, it does substantial work in this field of guard services, protection services.

THE COURT: Well, they have done some other

work for GSA, as I recall, is that correct?

MR. TUCKER: Pardon?

THE COURT: Have they not done work for the federal government before?

MR. TUCKER: Oh, yes, Your Honor.

THE COURT: That's what I thought.

MR. TUCKER: Yes. Yes.

THE COURT: Well, that's certainly a factor I'm sure the Justice Department counsel will take into consideration because, obviously, maintaining good relationship with the existing vendors is always important.

MR. TUCKER: Your Honor, but, you know, we don't even have a -- you know, by them not addressing --

THE COURT: I understand that, but that's not the Justice Department. That is the local CO made a decision.

MR. TUCKER: Oh, I understand. Okay.

THE COURT: Okay?

MR. TUCKER: Yes.

THE COURT: What I'm trying to tell you is you've got a competent lawyer from the Justice Department who has got to make a value judgment about the importance of this case to their office and to the

agency, and the agency counsel, I don't know, but is on the phone today, and I don't know how much involvement -- was the agency counsel involved with the CO and this all in the sense of --

MR. MICKLE: Your Honor, this is Douglas Mickle again.

I believe so, that the Mr. Malkin did review Mr. Dobb's determinations and findings and conclusions, and I think the reason why lost profits weren't considered in the factor, and Mr. Malkin, please pipe in if I say something completely wrong, that lost profits weren't considered in the equation because I believe the contracting officer did not feel that he was acting in bad faith.

THE COURT: I understand that.

MR. MICKLE: And that's why it wasn't. It's not that they weren't audited. We're just --

THE COURT: No, I understand that.

MR. MICKLE: And the evidence, as the D&F showed, is that, you know, four days before performance very little of the necessary equipment was ordered, so the contracting officer in this case thought that it was an equitable decision at this point to pay them for the costs, or pay NCLN20 for the cost, recognizing that they had performed well for the

government in the past, and put this all behind us, and everybody move forward.

MR. TUCKER: Well, Your Honor, as the Court knows, Your Honor has commented in the transcript on the report, the very detailed investigation that was done by the inspector general, and we believe that that report is meritorious, substantially meritorious, and we believe that there are other --

THE COURT: Well, I'm aware of that, and that's an issue that I'll have to get to some day if we go to trial. The Justice Department knows about that, and I think the smartest thing for me to do is to try to have -- you're in Detroit, is that right?

MR. TUCKER: I'm in Detroit, Your Honor.

THE COURT: And Justice is here, and your expert is in California?

MR. TUCKER: I'm sorry? You said?

THE COURT: Your expert was in California?

MR. TUCKER: No, no. Expert is here in Michigan.

THE COURT: In Michigan.

MR. TUCKER: Yes.

THE COURT: All right. Well, why don't I get off the phone and see if there is some time that the Justice Department folks and the agency people can

meet with you all up in Detroit when your expert is available, and not for deposition, but perhaps his involvement or her involvement might be helpful in this. I just don't know. And see if we can't come to some way of getting closure on this without doing a trial.

Would 60 days be enough time for you all to get that arranged?

MR. MICKLE: I'm sorry. Did you say 15 or 50, Your Honor?

THE COURT: Sixty.

MR. MICKLE: Oh, 60. I'm sorry.

MR. TUCKER: Yes, that's what I thought I heard too.

MR. MICKLE: We can easily do that, Mr. Tucker and I.

THE COURT: Why don't we do that, and then we'll have a status conference in 60 days. Hopefully you will have the case resolved. I mean, we can go through ADR but you all know how to do this.

MR. MICKLE: Well, we can certainly identify issues, Your Honor. You have been very open when we get back to you or Mr. Spangler has been. So if we come up with an issue or we would like to have some assistance, we have identified an issue, say it's a

legal on bad faith or something, or maybe lost profits in a T for C, we'll get back in touch with you expeditiously.

MR. TUCKER: But, Your Honor, I think that we can achieve in good faith pursue what the Court has suggested in terms of us meeting and exploring --

MR. MICKLE: Absolutely.

THE COURT: Well, both parties have to agree to ADR, and you know, I'm of a mind -- I mean, I don't get to vote now, but if we can't get a resolution, to go ahead and set it for early trial and get it done.

MR. MICKLE: I think you're right, Your Honor, and I agree with Mr. Tucker. I think once we get in a room and we just sit down and talk, if we can't agree upon something, we'll agree to disagree. Then we can move quickly to trial.

MR. TUCKER: And Your Honor, in terms of going quickly to trial, we have no interest whatsoever in trying to delay.

THE COURT: No, I understand.

MR. TUCKER: But if there are material, precise discovery matters that we have to pursue because it's necessary in light of our --

THE COURT: Well, you'll get your discovery, but we're going to do it fast.

MR. TUCKER: I understand.

THE COURT: I mean, it seems to me that there is not much -- this case is almost one you can do almost like it's an administrative record, and we'll put you on the docket for the fall, and get it done this year.

MR. MICKLE: Understand. Appreciate it, Your Honor.

MR. TUCKER: Okay.

THE COURT: So that way it is finished, but it seems to me, given the totality of the amount of money at issue and the unusual circumstances around 9/11 and the unusual circumstances having the inspector general's report in here, I respect this is what the CO's perspective on the situation is, and agency counsel's position, all of that, but it seems to me maybe with a -- you all strike me to be rational people, we might be able to find a resolution. And if you can't, I don't think ADR is going to make any difference. I think it would be better to go ahead and go to trial, not waste the time.

MR. TUCKER: I agree with Your Honor.

THE COURT: That's just my view.

MR. TUCKER: I agree with Your Honor on the ADR program.

THE COURT: But if you want to do it, I am perfectly willing to get you an ADR judge to do it. I just don't do ADR. My view is I'm here to try law suits, and I don't have the patience for it.

Okay. Well, that sounds productive, and we'll find a time -- it is not the winter so Detroit can be lovely in the spring.

MR. TUCKER: Your Honor, now, my client is in California.

THE COURT: Oh. Well, I don't know if --

MR. TUCKER: So we'll work it out.

THE COURT: Frankly, I think that the expert and you may be better suited to work out a deal with the Justice Department and agency counsel. I'm not cutting your client out, but it's going to be very expensive. If he wants to come to fly into Detroit, that's his business.

MR. TUCKER: No, I understand. Absolutely.

THE COURT: I remember talking to him once or twice on the phone, but I remember, one, he was hard to get a hold of if my memory serves me correctly.

MR. TUCKER: Your Honor, I would be surprised at that because he's readily available.

THE COURT: Well, it may have been the

counsel that said they weren't available.

MR. TUCKER: Yes, I think it was counsel. It definitely wasn't Mr. Jones because he is always almost 24 hours to us.

THE COURT: All right. Well, he might be able to come in. It seems to me Detroit is the place to do this though, at the least expense to everybody, and you know, see what you guys can work out reasonably in a reasonable way. He wants to continue doing business with you, and you want to keep your relationship well so you've got a lot working for you.

All right?

MR. TUCKER: All right.

THE COURT: We'll see you in 60 days, I hope with good news.

MR. TUCKER: All right. Thank you very much, United States.

MR. MICKLE: Thank you, Your Honor.

THE COURT: I'm just going to hang up. You all can stay on if you want.

MR. MICKLE: Okay, thanks, Your Honor.

MR. TUCKER: Okay. All right. Thank you, Your Honor.

THE COURT: If I disconnect you, the Justice Department will call you back.

MR. TUCKER: Okay.

(Whereupon, at 2:17 p.m., the hearing in the above-entitled matter was concluded.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

# EXHIBIT C

**AFFIDAVIT OF STEPHEN JONES**
**IN SUPPORT OF PLAINTIFF NCLN20, INC.'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NCLN20, INC.<br><br>Plaintiff,<br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 02-1282C<br>JDG: Susan G. Braden |

## AFFIDAVIT OF STEPHEN JONES IN SUPPORT OF PLAINTIFF NCLN20, INC.'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL

STATE OF FLORIDA )
COUNTY OF ORANGE )SS.

I, Stephen Jones, being duly sworn, says:

1. I am Stephen Jones, and I have been President of Plaintiff, NCLN20, Inc. ("NCLN20") in this action, since 3/22/90, and make this Affidavit supporting Plaintiff NCLN20, Inc.'s Response to Defendant USA's Motion for Partial Dismissal (i.e., of NCLN20, Inc.'s Third and Fourth Claims for Relief asserted in its First Amended Complaint served herein on 9/21/07) ("Amended Complaint"). I personally conducted or supervised the preparation and submission of NCLN20's bid proposals for the Contract with the USA/GSA/FPS and Monetary claims of 8/31/05, 12/1/05 and 10/26/06 as stated and described in ¶s 5 through 21, 53, 55-57, 61, 63, 82-88 of NCLN20's Amended Complaint. Further, I personally have identified and am familiar with the Exhibits described in and incorporated by reference in NCLN20's Amended Complaint; USA's Status Reports filed 12/05/05 (DA Bates stamped 3 thru 15); NCLN20's Response To Law Clerk's E-Mail dated 3/5/07 and its Response to Status Report and Objections of 12/19/06 (Docket #s 55, 64, 65, 71). Further, I have identified the signatures of Karim Abercrombie, Clarence B. Tucker,

Esq., and my signature that appear on such documentation enumerated above, and monetary damages claims of 8/31/05, 12/1/05 and 10/27/06 and related Demands for Final Decision.

2. The following facts are known by me to be true, of my own personal knowledge. I am competent to testify to such facts and would so testify if I appeared in Court as a witness at the trial on NCLN20, Inc.'s Third and Fourth Claims for Relief.

3. The following facts are relevant to Plaintiff NCLN20, Inc.'s Third and Fourth Claims for Relief alleged in NCLN20's Amended Complaint. Further, I have read and reviewed Defendant USA's Motion for Partial Dismissal, Brief—Statement of the Case, Argument, pages 1 through 6, and CO Arthur Dobbs Declaration dated 10/26/07 and I am familiar with certain of the factual matters stated therein.

4. On 9/30/02, Plaintiff NCLN20, Inc. filed its Complaint for Conversion of Contract #GS05PO1GCD0009 Termination for Default into Termination for Convenience against the USA, Dkt #1. No monetary damages were then sought against the USA. On 1/31/03, Defendant USA filed its Answer, admitting ¶s 1, 11 (part), 12, 15 (part), 17-19, 20 (part), 21, 22 (part), 23-26 (part), 27, 28-29 (part), 30, 31-34 (part), 42-44 (in part), 45, 46-47 (in part), 49-53 (part), 55, 56-65 (part), 67-69 (part), 71-72 (part), 73, 74-79 (part), 82-83 (part), 93 (part), 94 (part), 98-99 (part), 100, 106 (part), 113-114 (in part), 117 (part), 119, 120 (part), 123-124 (part), 132-133 (part) of NCLN20's Complaint, Dkt #8, Exh 34. On 8/19/05, Hon. Susan G. Braden issued a Scheduling Order commanding the parties to submit briefs on the issue of the Court's jurisdiction to render a monetary judgment over NCLN20's unfiled alleged monetary bad faith breaches of contract claims against the USA, Dkt #s 50-52.

5. On 8/31/05, NCLN20's counsel, Malyszek & Malyszek, submitted NCLN20's certified monetary claims for a request for equitable adjustment ("REA"), seeking anticipatory lost profits damages claims for bad faith breaches of contracts for $4,904,074.00, to Contracting Officer Arthur S. Dobbs for a Requirements Contract #GS05P99GCD0005 with the USA/FPS for the performance of Alarm Monitoring and Operations of Public Safety-Related Telecommunications and Security Systems at the GSA's/ FPS's "Mega Center" in Battle Creek, Michigan; Amended Complaint, ¶s 3, 5(a),

53, 82, 83, 84 and Binder 2, Exh N; Binder 3, Exhs 3, 6, 7; Binder 4, Exhs 84, 87, 88; and for a Requirements Contract #GS05PO1GCD0009 with the USA/FPS for the performance of Armed and Unarmed Uniform Security Guard Services in Michigan, Amended Complaint ¶s 3, 5, 6-21, 53, 61, 62; Binder 3, Exhs 77, 7, 3; Binder 4, Exhs 84, 85. NCLN20's REA of 8/31/05 monetary claim for bad faith breaches of contracts of $4,904,074.00, included **"Cost of Money Damages--$390,392.00 "when the Government pulled money out of NCLN20's account**" on the Mega Center Contract-Battle Creek, Michigan and **"Actual Damages Costs of Battle Creek Contract"--$306,419.00 for "damages and loss of profits**". Amended Complaint, ¶s 82, 87, 90, 92, 95; Binder I; Binder 3, Exhibits 56, 57, 3; Binder 4, Exhs 86, 82, 84 ("Malyszek & Malyszek's [NCLN20's then counsel of record] letter to CO Dobbs of 12/1/05 in response to ACO Roger Pinnau's letter of 10/7/05 and 11/21/05 [Binder III, Exhs 51, 52] regarding NCLN20's 8/31/05 REA, which also included an itemized breakdown of NCLN20's statement of its monetary amount of damages claim, attached substantiating invoices and a statement of the basis of NCLN20's REA and a request for a final decision, Binder IV, Exh 84). These certified monetary claims specified the relief desired and the justification therefor, including the amounts requested.

6. CO Dobbs acknowledged receipt of NCLN20's REA of 8/31/05 on 9/12/05. Amended Complaint, ¶s 2, 53, 56; Defendant's Status Report 4/23/07, Exhibit C, RFJN ¶ 11, Dkt # 55; Binder 4, Exhs 82, 83; Defendant's Status Report 4/23/07, with attached Decision and Findings/ Determination of CO Dobbs, page 7 of 9 ("**This was done in a request dated August 31, 2005 resulting in a Request for Equitable Adjustment based upon breach of contract damages due to the Contracting Officers actions. Damages were divided into (1) anticipated profits, (2) cost of money damages *** After I rejected the claimed damages *****." [emphasis added]).

7. On 9/23/05, Hon. Braden conducted a Status Conference by telephone, during which the Court noted that: (a) the Government contended that CO Dobbs 9/28/01 Notice of Termination for Default ("T4D") is not a final decision for purposes of NCLN20's monetary damages claims; (b) NCLN20 hadn't sought monetary damages in its pending complaint; (c)

NCLN20 needed to file a <u>certified</u> claim with the CO for its monetary damages;(d) NCLN20 had already filed its monetary damages claim with CO Dobbs; (e) the USA/CO Dobbs had 60 days from the date of filing NCLN20's monetary damages claim with CO Dobbs to render his final decision. Transcript of proceeding of 9/23/05, pages 4 through 11, Dkt #55. By order filed 10/3/05, Judge Braden ordered this action to be stayed pending a final decision by CO Dobbs on NCLN20's pending REA. Amended Complaint, ¶54; Exh 2. This Order reads:

> **"Pursuant to the court's order of August 19, 2005, the parties submitted briefs discussing the Court's jurisdiction in this case. In their briefs, the parties agreed that this Court, although possessing jurisdiction to issue declaratory relief, does not possess jurisdiction to award the Plaintiff damages because the Contract Disputes Act requires a final decision by a contracting officer on a claim as a prerequisite to jurisdiction. See 41 U.S.C. § 605(a) (2005); 41 U.S.C. §a)(3) (2005). <u>On August 31, 2005, however, Plaintiff submitted a certified claim to the contracting officer seeking monetary relief in the form of an Request for Equitable Adjustment ("REA")</u>.** (Emphasis added).
> **"At a teleconference on September 23, 2005, the parties indicated that the REA could have an affect upon the motions pending before the court. For that reason, <u>the court orders this case stayed pending a final decision by the contracting officer on Plaintiff's REA</u>. The Government is ordered to file a status report with the Court on December 5, 2005, as to the status of the contracting officer's decision.**" (Emphasis added).

8. Due to my inquiry and at my direction, on 2/20/07, NCLN20, Inc.'s counsel of record, Clarence B. Tucker, Sr., Esq., wrote a letter to Defendant USA's counsel, Douglas Mickle, Esq., DOJ, among other things, stating:

> **"Despite the mandates of 41 USCS § 605(a)(2)(A), (B), the submission of NCLN20's aforementioned Certified Restated, Modified and Amended Claims on 10/27/06, together with its Final Demand and the USA's Status Report of 12/1/06, CO Dobbs has failed and refused to issue a decision or notify NCLN20 of the time within which a decision will be issued. Consequently, NCLN20, Inc. is entitled to regard CO Dobbs' failure to issue a decision within 60 days of 10/27/06 as a denial of its aforesaid Claim. See, e.g., <u>Aerojet Gen. Corp</u>., (1995) ASBCA 95-1 BCA ¶ 27470; <u>DHR, Inc.</u>, (1987 EBCA) 88-1 BCA ¶ 20451.**" See Exh B to Plaintiff NCLN20's Response to the Law Clerk's E-Mail Dated 3/5/07 Requiring Update on Status of the DCAA Audit and Response/Objection to Defendant USA's E-Mail Dated 3/17/07 re "Status of DCAA Audit", Dkt # 65.

9. Also, in Plaintiff NCLN20's Response to the Law Clerk's E-Mail Dated 3/5/07, Dkt # 65, NCLN20 again notified Defendant USA "to regard CO Dobbs failure to issue a decision within 60 days of 10/27/06 as a denial of its 10/26/06 Amended Claims". Id.

10. (a) On 10/27/06, Plaintiff NCLN20, Inc.'s counsel Clarence B. Tucker, Sr., Esq. submitted to CO Arthur S. Dobbs its Certified, Restated, Modified and Amended Claims for Monetary Damages for $4,164,518.00 plus pre-judgment interest of $518,632.00 and attorney fees and costs of $368,048.00 for bad faith breaches of contract dated 10/26/06, together with additional substantiating data (Appendix—Exhibits 1 through 81 and Exhibit Binders 1, 2, 3, 4 and 5, Dkt #s 64, 71) and Memorandum of Authorities, Certification of claims dated 10/26/06 by Stephen Jones, President of NCLN20, Inc., Certificate of Service and Requests for Final Decision signed by NCLN20's counsel of record and its President, Stephen Jones, requesting that CO Dobbs issue his final decision within sixty (60) days. See Tucker attached Affidavit, ¶ 22.

(b) In summary, Plaintiff NCLN20's Amended Certified claims submitted to CO Dobbs on 10/27/06 sought monetary damages for Defendant USA's bad faith

*BREACHES OF CONTRACTS, namely*

| Description | | SUPPORTING DATA | | TOTAL DAMAGES |
|---|---|---|---|---|
| Anticipatory Lost Profits on Federal Protective Services (State of Michigan) Contract-GS05PO1GCD0009 | (A) | Schedule 3 | $ | 3,924,591 |
| **Anticipatory Lost Profits on Battle Creek Mega Center Contract (6 Month Extension)**-GS05P99GCD0005 | (B) | Exhibit N | | 67,009 |
| **Unpaid Battle Creek Contract Invoices** | | Schedule 11 | | 97,775 |
| **Underpaid Battle Creek Contract Invoices** | | Schedule 12 | | 75,143 |
| Attorney's Fees | (C) | Schedule 13 | | 368,048 |
| Damages Before Interest | | | $ | 4,532,566 |
| Prejudgment Interest (Cost of Money) to 9/30/06) | | Schedule 2 | | 518,632 |
| TOTAL DAMAGES TO 9/30/06 | | | $ | 5,051,198 |

NOTE:

(A) GSO5PO1GCD0009 is the reference number for the U.S. General Administrative Services Federal Protection Service Invitation for Bid ("IFB").

(B) Supporting data is contained within the NCLN20 Cost Proposal, Exhibit N. GS05P99 GCD0005 is the contract number for the 6-month extension of Alarm Monitoring & Operation of public Safety-Related Telecommunications & Security Systems at the Battle Creek Mega Center.

(C) See Attorney's Fees Schedule (Schedule 13). Additional fees have been and will continue to be incurred related to the ongoing matter and this amount is subject to change. See Binder I, Schedule I.

(c) In the CONCLUSION of NCLN20's aforesaid Certified, Restated, Amended Monetary Claims, it requested that CO Dobbs review its claims and "issue a final decision under the Disputes Article of the Contract, FAR 52.233-1." Id. at page 24. Accord, Request for Final Decision dated 10/26/06; Exhs 3, 3A. See 1st Amended Complaint, ¶s 55, 57, 86 through 88, 95, 100(d), 102 and the cited Exhibits and Binders.

11. (a) On 4/18/07, CO Dobbs issued a Final Decision based on purported Findings dated 4/13/07, denying Plaintiff NCLN20's monetary claims submitted to CO Dobbs on 8/31/05, 12/1/05 and 10/27/06. Exhs 42, 83.

(b) In his Final Decision of 4/18/07, Exh 82, CO Dobbs stated

> **"This pertains to terminated Contract #GS05PO1GCD0009 for the provision of Armed and Unarmed Security Guard Services at GSA owned and supported facilities in the State of Michigan. This also is in response to your Request for Equitable Adjustment (REA) in amount of $4,904,074. The REA is undated but was electronically submitted via facsimile to the office after close of business on August 31, 2005 and a hard copy was delivered via FedEx on September 12, 2005.**
>
> * * *
>
> **In response to the REA, the Defense Contract Audit Agency (DCAA) was requested to audit NCLN20's claim. The audit concluded that NCLN20 incurred $46,856.00 in expenses leading up to the termination for default. Without admitting any fault on the part of the Government, but acting in what I believe is the sake of fairness, I have decided to convert the termination for default to a termination for convenience."**
>
> * * *
>
> **This is the final decision of the Contracting Officer... *** Instead of appealing to the CBCA, you may bring an action directly in the United States Court of Federal Claims within 12 months of the date you receive this decision."** (Emphasis added).

(c) In his Determination and purported Findings dated 4/13/07, Exh 82, CO Dobbs stated:

> **"The lawsuit was filed prior to exhausting all available administrative procedures and led the Government to point out to NCLN20 that it had failed to submit a claim to establish damages. This was done in a request dated August 31, 2005 resulting in a Request for Equitable Adjustment based upon breach of**

> **contract damages due to the Contracting Officer's actions. Damages were divided into (1) anticipated profits, (2) cost of money damages, actual damages and legal fees. After I rejected the claimed damages, an independent audit was ordered from Defense Contract Audit Agency (DCAA) which was conducted in March, 2007. The DCAA review concentrated upon credits for returned items that had been disclosed, leased vehicles that had been returned for credit, and other costs not disclosed in their submitted data.**
>
> * * *
>
> **Further, any payments associated with an expired NCLN20 contract for alarm dispatch services at the Battle Creek Mega Center, which expired on September 30, 2001, continues to be on hold regarding close out transactions because this T4D will be released.**" (Emphasis added).

See First Amended Complaint, ¶s 56, 57 and cited Binder and Exhibits, Dkt # 71.

12. CO Dobbs did not within 60 days of receipt of NCLN20's 8/31/05, 12/1/05 and 10/27/06 Certified Monetary Claims either issue a decision or notify NCLN20 as to when a delayed decision would be issued. Further, CO Dobbs failed to issue a decision within a reasonable time as required by 41 USC § 605(c)(2) and (c)(3).

13. (a) In accordance with CO Dobbs final decision of 4/18/07 (and 41 USC § 609(a)(1), (3), Plaintiff NCLN20, Inc. served its action for monetary damages in this Court on 9/21/07. See Docket # 71 and Plaintiff NCLN20's First Amended Complaint of 9/21/07.

(b) Prior to 8/31/05, Plaintiff NCLN20 attempted to negotiate a settlement of its monetary claims against the USA with its of-record counsel, without success. See e.g., Docket #s 11, 28, 20; NCLN20's Request to Take Judicial Notice ("RFJN"). Further, after 10/27/06, Plaintiff NCLN20 requested and attempted to settle its Third and Fourth claims asserted in its First Amended Complaint of 9/21/07, without success.

(c) The USA, through CO Dobbs, since 9/27/01, commenced disputing NCLN20's anticipated monetary claims by stating:

> "**A portion of a contract's final payments are typically withheld, pending review by your company and GSA. Please anticipate this withholding until the final contract payment is agreed upon by both parties and a release of claims is signed by you and provided to me.**" (Exh 21).

By letter dated 10/16/01, Stephen Jones, President of Plaintiff NCLN20 demanded payment of Invoices 3461-64 for $38,785.98, $38,785.98 and $20,203.33 and protesting the GSA's

withdrawing its payments to NCLN20 for these invoices on 10/11/01, but withdrawing the payments on 10/12/01. Exh 56. Also, see Karim Abercrombie's letter dated 10/16/01 to CO Dobbs further demanding payment of $75,142.20 due to "computation problems with the spreadsheets" and expressly or impliedly requested that CO Dobbs make decisions as to NCLN20's entitlement. (Exh 57). Further, see Schedules 11, 12, Exhs K, L, I; CO Dobbs letter dated 7/18/07 to Plaintiff NCLN20's counsel, affirming the USA/GSA's **"withholding of payments [on the Mega Center Contract GS05PO1GCD0001] on the completed Contract GS05P99GCD0009(sic)" "due to the termination for default (T4D dated September 28, 2001"**, falsely claiming that "**NCLN20 was liable for re-procurement costs on the Michigan Security Guard Contract until April 18, 2007**." See the USA's evasive and false 3/3/04 answer to Plaintiff NCLN20's Interrogatory 30, page 44, as sworn to by CO Dobbs and ACO Pinnau, Exh 44, Dkt # 71; Defendant's Brief dated 8/30/05 at page 2, Joint Preliminary Status Report of 3/24/04. On 11/14/07, Plaintiff NCLN20 submitted to CO Dobbs a Limited Release of Claims for Contract GS05P99GCD0005, on GSA Form 1142 (provided to NCLN20 by the USA's counsel), with the exceptions listed on a Rider thereto, with new Invoices attached. On 11/16/07, ACO Roger Pinnau sent an e-mail to GSA's counsel Douglas Mickle, DOJ, submitting two (2) forms of Release of Claims—DHS Form 0700-03 and GSA Form 1142—and falsely asserting that NCLN20's claims were not "CDA claims" and that NCLN20 was not entitled to payment of interest".

(d) On 11/16/07, Douglas Mickle forwarded Pinnau's e-mail to NCLN20's counsel, Clarence B. Tucker Sr., Esq., first asserting that "**a claim for interest is not due upon the Mega Center claims as the United States has only waived its sovereign immunity for contracts that were submitted pursuant to the CDA. The invoices are routine payment requests and are not considered format CDA claims.**"

(e) NCLN20's Limited Release of Claims submitted to CO Dobbs on 11/14/07, was prepared in accordance with G-8 552. 232-72 Final Payment of the Contracts, and specifically excepted the stated claims.

(f) The USA/GSA/CO Dobbs continue to dispute NCLN20's monetary claims alleged in its Third and Fourth Claims for Relief asserted in its First Amended Complaint served 9/21/07, in that:

(i) CO Dobbs rejected "these damages claims" on 4/18/07, Exh 83 and denied any liability therefor;

(ii) On 1/30/02, ACO Pinnau denied liability on NCLN20's said monetary claims, Exh 58;

(iii) Dispute repeated demands for payment of these monetary claims, except for the conditional and limited offer of settlement of part of NCLN20's claims as stated in CO Dobbs' letter of 7/18/07 and ACO Pinnau's e-mail 11/16/07, the USA has refused and failed to admit liability and pay these monetary claims. See First Amended Complaint of 9/21/07, ¶s 57, 86, 87, 88, 90, 92(e), (f), 100(d), (e), (f) and the cited Binders and Exhibits. Dkt #71.

(iv) In Plaintiff NCLN20's Third Claim and Fourth Claims for Relief (1st Amended Complaint of 9/21/07), it seeks monetary damages for (I) payment of interest, 41 USC § 611; (II) reasonable attorneys fees, costs and expenses; (III) anticipatory breach of contract compensatory damages of $239,929.00, all of which the USA/GSA have DENIED. See the USA's Answer to Plaintiff NCLN20's Amended Complaint, ¶s 64(a), (d), 69(b), 76(a), Dkt # 72.

(v) The USA/GSA did not act upon NCLN20's Third and Fourth Claims for Relief within a reasonable time (i.e., from 10/2001 to 4/18/07 or 9/21/07).

14. On 12/1/05 and 10/27/06, Plaintiff NCLN20 fully complied with ACO Roger Pinnau's requests for additional documents to support the claims asserted in its REA of 8/31/05 and restated, supplemented and modified monetary damages claims of 10/27/06. See Pinnau's letters of 10/7/05 and 11/21/05, Binder III, Exhs 51 & 52 and Plaintiff NCLN20's supplement of 12/1/05 to its 8/31/05 REA and its Certified Amended, Restated/ Modified Monetary Claims of 10/27/06, together with Binders I, II, III, Schedules I through XIII, Exhs A-R, and Exhibits 1 through 81, Dkt #s 64, 71. In fact, Defendant USA/CO Dobbs failed and refused to audit or review NCLN20's monetary claims for bad faith

breaches of contract monetary damages, etc. The USA/GSA/FPS/CO Dobbs repeatedly misrepresented to this Court and NCLN20 that it would do and had done so. USA Status Reports, Dkt #s 55, 58-61, 66-67. In issuing his final decision of 4/18/07, CO Dobbs failed and refused to address NCLN20's monetary bad faith breach of contract damages claims. Refer to Pinnau's letter of 10/7/05 and 11/21/05, Binder III, Exhs 51,52; Defendant USA's Status Reports dated 3/5/05, 9/5/06, 12/1/06, 3/30/07 and 4/23/07 (USA Status Reports, Dkt #s 55, 58-61, 66-67) and Plaintiff NCLN20's Response and Objections to Defendant's Status Reports of 12/1/06; Plaintiff NCLN20's Response to Law Clerk's E-Mail dated 3/5/07 Requiring an Update to the Status of the DCAA Audit and Response and Objections to Defendant's E-Mail letter of 3/29/07 to ACO Pinnau re Litigation Support Request for REA (Dkt #s 64, 65); Clarence B. Tucker, Sr., Esq. E-Mail to DCAA/White dated 3/12/07 in reply to their 3/9/07 E-Mail; DCAA/White's E-mail 3/20/07 to Clarence B. Tucker (Dkt # 65). In fact, the USA/GSA/FPS/CO Dobbs never requested an **"audit of Plaintiff NCLN20's 8/31/05 REA claimed monetary damages of $4,904,073"** or its 10/27/06 Amended Claims Monetary Damages of $4,164,518, plus pre-judgment interest of $518,632 and attorneys fees, expenses and costs of $368,048. To the contrary, DCAA/White was only authorized to conduct their "review" of "items purchased" by NCLN20 which "related to" Contract No. GS05Po1GCD0009 (i.e., so-called start-up net costs). Id. White's letter of 3/29/07 to Pinnau. However, Defendant USA/GSA/FPS/CO Dobbs had actual knowledge of NCLN20's monetary claims for "start-up net costs" related to Contract #GS05PO1GCD0009 in its 8/31/05 REA, as supplemented 12/1/05 and as Restated, Supplemented and Modified on 10/26/06. Compare Binder III to Plaintiff NCLN20's Amended Complaint, 3, 84, 86, Exhs 55, 56, 57 and amended claims of 10/26/06 (Binder 3, Exh A). Dkt #s 64, 71. Although the USA/GSA/FPS/CO Dobbs/ DCAA/White received NCLN20's supplemented monetary claims, substantiating data on 11/1/06, they neither audited nor reviewed NCLN20's compensatory and consequential monetary damages claims of $4,164,518, or these supporting materials (with the exception of NCLN20's Start-Up Performance Summary and Documentation Binder Tabs A-J, Exh 81). See also Exhibit I, Schedules 1-13 Breaches of Contracts Damages Summary. Dkt #s 71, 55.

15. I have identified and am familiar with the documentary exhibits incorporated herein by this reference, and described in ¶ 17(d), (f), (g), (o) below and ¶12 above (Demands for Final Decisions and Monetary Claims/REA dated 8/31/05, 12/1/05 and 10/26/06).

16. I have identified and recognize my signature that appears on the specified documents described and enumerated in ¶ 14 above.

17. The documentary exhibits described herein and below and incorporated herein by this reference are true and correct originals or copies of originals of:

(a) ACO Roger Pinnau's e-mail dated 11/16/07 to Douglas Mickle, Esq., DOJ, with Attachments 1 and 2

(b) Douglas Mickle's e-mail dated 11/16/07 to Clarence B. Tucker, Esq., with Attachments 1 & 2

(c) ACO Roger R. Pinnau's letter dated 10/22/07 to Clarence B. Tucker, Esq., with attached CO Dobbs letter dated 7/18/07 to Clarence B. Tucker, Esq.

(d) Clarence B. Tucker's e-mail dated 11/14/07 to CO Dobbs, together with NCLN20's signed Limited Release of Claims (GSA Form 1142), Rider and 4 New Mega Center Invoices

(e) Transcript of proceedings dated 7/10/07 in the above-captioned case, comprising 14 pages

(f) NCLN20, Inc./Stephen Jones claims/demand letter of 10/16/01 to CO Dobbs regarding Contracts GS05Po1GCD0001/5, with attachments

(g) NCLN20, Inc./Stephen Jones claim/demand letters to CO Dobbs dated 10/16/01 with attached three (3) Invoices, Dobbs letter of 9/27/01 and Citibank account print out dated 10/15/01

(h) Karim Abercrombie/NCLN20, Inc. letter dated 10/16/01 to CO Dobbs, together with monthly problem breakdown

(i) Doug Mickle, Esq. e-mail dated 11/16/07 to Clarence B. Tucker, Esq. re Release of Claims, with attachments

(j) Roger Pinnau e-mail dated 1/30/02 to Karim Abercrombie regarding NCLN20's payment of claims described in reply to Karim Abercrombie e-mail regarding "claim for monies and result of six months of under billing"

(k) Defendant USA's Status Report dated 4/23/07, with Attachments Exh 1—CO Dobbs final decision letter dated 4/18/07, Exh 2—CO Dobbs Determination and Findings dated 4/13/07; Exh 4—DCAA Final Audit Letter dated 3/29/07 with attached Matrix and Purchase Items

(l) DCAA/Doris M. White's letter dated 3/20/07 to Clarence B. Tucker, Esq.

(m) Defendant USA's Status Report dated 12/1/06

(n) Clarence B. Tucker's transmittal letter of 10/27/06 to Doris White/ DCAA, submitting NCLN20's Amended REA Breach of Contracts Damages Claims, with attachments, Certificate of Service and Request for Final Decision

(o) Clarence B. Tucker's transmittal letter of 9/27/06 to CO Dobbs, submitting NCLN20's Certified, Restated, Amended Claims for Monetary Damages, Request for Final Decision, with Certificate of Service, Appendix of Exhibits, Exhibit Binders I and II. Dkt # 71

(p) Douglas Mickle E-mail dated 3/03/06 to Clarence B. Tucker re NCLN20's objection to Defendant's Status Report, with request for substantiation of NCLN20's "claim for lost profits"

(q) Defendant USA's Status Report dated 3/3/06, wherein Douglas Mickle admitted that NCLN20's 12/1/05 letter to CO Dobbs "claimed $4,904,073 damages *** based upon anticipated profits and cost of money damages" (Emphasis added)

(r) Defendant USA's Status Report dated 3/30/07

CYNTHIA G. YOUNG
Notary Public - State of Florida
My Commission Expires Apr 13, 2010
Commission # DD 540470
Bonded By National Notary Assn.

Stephen Jones, President of Plaintiff
NCLN20, Inc.

Subscribed and sworn to before me
this 9 day of January, 2008

Cynthia G. Young
Notary Public
My commission expires: 4-13-10

# EXHIBIT D

**PLAINTIFF NCLN20, INC.'S
REQUEST FOR JUDICIAL NOTICE OF
EVIDENTIARY EXHIBITS INCORPORATED IN
PLAINTIFF NCLN20, INC.'S FIRST AMENDED COMPLAINT
BY RCFC 10(c) IN SUPPORT OF PLAINTIFF NCLN20, INC.'S
RESPONSE TO DEFENDANT'S MOTION FOR
PARTIAL DISMISSAL**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NCLN20, INC., Plaintiff, vs. THE UNITED STATES OF AMERICA, Defendant. | ) | No. 02-01282C<br>JDG: Susan G. Braden |

**PLAINTIFF NCLN20, INC.'S REQUEST FOR JUDICIAL NOTICE OF EVIDENTIARY EXHIBITS INCORPORATED IN PLAINTIFF NCLN20, INC.'S FIRST AMENDED COMPLAINT BY RCFC 10(c) IN SUPPORT OF PLAINTIFF NCLN20, INC.'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

**1.** I am a member in good standing of the Bar of the State of Michigan and the above-entitled Court. I have been admitted *pro hac vice* to the Bar of this Court for the purpose of representing Plaintiff NCLN20, Inc. ("NCLN20") in this litigation.

**2.** I submit this Plaintiff NCLN20's Request for Judicial Notice of Exhibits incorporated in Plaintiff NCLN20's First Amended Complaint by RCFC 10(c) in support of Plaintiff's Response to Defendant's Motion for Partial Dismissal. Pursuant to FRE 201(a),(b),(d),(e), Plaintiff NCLN20, Inc. hereby requests that this Court take Judicial Notice of the Adjudicative Facto enumerated herein below in support of Plaintiff NCLN20's Response to Defendant's Motion for Partial Dismissal.

**3.** 41 USCS§ 605, 609 and 611; 28 USC § 1491(a)(1), (2)

**4.** 48 CFR§ 201, 202, 206 and 207 and FAR 52.233-1 Disputes.

**5.** Attached as Exhibit A is a true and correct copy of CO Dobbs Letter dated 7/18/07 to Clarence B. Tucker, Sr., Esq.; First Amended Complaint ¶ 51, Dkt# 71.

**6.** The Docket in the above-captioned Case.

**7.** Plaintiff NCLN20 Appendix of Exhibits to its First Amended Complaint served on 9/21/07 and filed herein on 9/27/07. Dkt# 71.

**8.** Defendant's Brief Discussing the Court's Jurisdiction dated 8/30/05, stating in part that: **"NCLN20's claim for money damages as set forth in the March 2003 Joint Status Report should be rejected."** Id at Page 1 and **"[I]n a Joint Preliminary Status Report *** filed with the Court on March 24, 2004, NCLN20 asserted that it would seek monetary damages."**

**9.** Attached as Exhibit B is a true and correct copy of the Transcript of Proceeding in this Case of 5/10/07 Pages 1-17, wherein Douglas Mickle, DOJ, stated (in response to my statement to the Court that **"they did not audit any of the [NCLN20's] lost profit damages *** claim"**, TR 6:18-24) that: **"lost profits weren't considered in the equation because I believe the contracting officer did not feel that he was acting in bad faith."** Id at 10: P2-14.

**10.** The Court's Order dated 5/9/07, which reads:

> **"On October 3, 2007, the court ordered this case stayed pending a final decision by the contracting officer on Plaintiff's August 31, 2005 Request for Equitable Adjustment ("REA"). On April 24, 2007, the Government filed a status report stating that the contracting officer had reviewed Plaintiff's REA, and issued a Determinations and Findings regarding Plaintiff's claims on April 13, 2007. On April 18, 2007, a letter was sent to Plaintiff's counsel announcing the contracting officer's decision. Accordingly, the stay on this case is, hereby, lifted."** Dkt# 68.

**11.** Defendant USA's Status Report dated 12/5/05 with attachments (Appendix) namely:

"NCLN20'S Request For Equitable Adjustment .......................... 1

Letter from contracting officer to NCLN20 seeking additional information, October 7, 2005 ...................................................... 16

Letter from contracting officer to NCLN20 seeking additional information, November 21, 2005 ..................................................... 20

Letter from NCLN20 to contracting officer with information pertaining to NCLN20's REA, December 1, 2005 .................................... 20."

Bates Stamped. Dkt# 55.

Respectfully Submitted By,

s/ Clarence B. Tucker, Sr.
**CLARENCE B. TUCKER, SR. (P-40703)**
Attorney of Record for Plaintiff NCLN20, Inc.
Ford Building
615 Griswold - Suite 1210
Detroit, MI 48226
(313) 230-7892
Fax#: (313) 230-7896
Email: ctucker@tuckerandhughespllc.com

Dated: 1/11/2008