# EXHIBIT B

**5/10/07 TRANSCRIPT OF PROCEEDING IN THIS CASE**
**(NCLN20, INC. VS. USA, #02-1282)**
**PAGES 1-17**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NCLN20, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 01-1282C |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Thursday,
May 10, 2007

Live Tape

(The following transcript was transcribed from a digital recording provided by U.S. Court of Federal Claims to Heritage Reporting Corporation on May 10, 2007.)

APPEARANCES:

For the Plaintiff:

CLARENCE TUCKER, Esquire

For the Defendant:

DOUG MICKLE, Esquire
U.S. Department of Justice
Washington, D.C.

Also for the Defendant:

JOEL DAVID MALKIN, Esquire
U.S. General Services Administration

P R O C E E D I N G S

(2:02 p.m.)

THE CLERK: Good afternoon. This is Matt Spangler, Judge Braden's law clerk. I am here with Judge Braden. I would like to go ahead and get started.

If each person on the line could speak their name and the party they represent. We are having this call digitally recorded.

MR. TUCKER: This is Clarence Tucker, and I represent the Plaintiff, NCLN20.

MR. MICKLE: And I'm Doug Mickle, and I am with the Department of Justice representing the United States.

MR. MALKIN: Joel David Malkin, Assistant Regional Counsel with the United States General Services Administration.

THE COURT: Good afternoon. It's Judge Braden.

I have your status report and I see that we finally heard from the CO. I guess the first thing I need to figure out is what is Plaintiff's intent.

MR. TUCKER: Your Honor, Plaintiff is in the process, number one, of assessing the finding and decision of the CO. We have never, to our knowledge

in this case, there have never been detailed findings, so that we got those for the first time.

So we're assessing those findings, and we're assessing the impact of those findings on the case in general in terms of our amended complaint or our supplemental complaint, and then the assessment of the legal effects of the CO's decision on our various complaints and the work that we must do to say file our amended complaint.

In addition, we are trying to make a determination, once we do that, of whatever additional pretrial discovery would be necessary, what effect it would have on the existing or pending motions for summary judgment, and you know, pretty much we need to do that in order to, I think, assess procedurally what kind of scheduling we'd be looking at once the amended complaint is filed.

THE COURT: Well, the case was filed in 2002. Now, I realize it's not -- part of our problem is the prior counsel was not convinced that the matter had to go to the CO before a complaint could be filed, but we solved that problem, and the government has offered you how much now? Forty thousand on a $4 million claim?

MR. TUCKER: I think it was 46, somewhere in

that range, yes, Your Honor.

THE COURT: Okay. And you talked to the Justice Department about possibly coming up with some type of settlement that may take into account their additional costs for trial, et cetera, in moving this forward?

MR. TUCKER: Your Honor, in our various status reports, we had requested of the government at what point would we engage in a good faith discussion, even though I don't think that was in the Court's order. It was one of the --

THE COURT: Well, I wouldn't expect to have to order you to do that.

MR. TUCKER: -- things I think you put in the transcript.

Pardon?

THE COURT: I wouldn't expect to have to order you and government to do that. I mean, you're mature litigants.

MR. TUCKER: That's correct, Your Honor, but that has not been accomplished, and we have made a invitation for that to happen, but it hasn't happened.

MR. MICKLE: But it couldn't have happened until we finally got the CO's decision --

THE COURT: Well, you have it now.

MR. MICKLE: -- was completed, and we have it now, and the present complaint before the Court, as Your Honor pointed out, I think, back in 2004, was for a T for D, or T for C conversion, no damages.

So as the current complaint stands, I think this suit is mood, so either we have to have an amended complaint seeking, I guess, the wrongful conversion of the termination for default or the termination for convenience -- I guess that would be the theory -- seeking and alleging that it was somehow done in bad faith to entitle NCLN20 to lost profits for the initial year of the contract. I guess that's the theory. I'm assuming that's the theory.

MR. TUCKER: I'm sorry, who is speaking?

MR. MICKLE: Oh, I'm sorry. This is Doug Mickle.

MR. TUCKER: Hey, Doug. How are you doing? Okay.

MR. MICKLE: But I'm willing to do that. I'm also willing to see if we want to quickly -- you know, once I hear from Mr. Tucker, if he's going to amend the complaint, I don't even have a problem, Your Honor, if we quickly went over to an ADR judge to try to work this out, but expeditiously because, as Your Honor pointed out, this has been on the --

THE COURT: I mean, I don't want it hanging on my docket.

MR. MICKLE: No, I understand, Your Honor.

MR. TUCKER: Your Honor, as new counsel on board, you know, we think that there are things that -- first of all, Your Honor, which the Court has probably has not seen, but we filed a very substantial claim for damages.

THE COURT: With the CO?

MR. TUCKER: Pardon?

THE COURT: With the CO.

MR. TUCKER: With the CO. It consisted of probably four volumes of notebooks.

THE COURT: Okay.

MR. TUCKER: It was a very extensive filing, and one of the things that we are somewhat set back by is that the government only audited, in effect, the so-called termination for convenience costs. We sent an expert from a consulting firm to California to coordinate with the government in doing their audit, which came late after -- which was conducted, I think, in maybe a day or half a day, and they did not audit any of the lost profit damages, which was a substantial portion of our claim.

I would note to the Court that on October 7,

2005, there was a letter sent to Mr. Jones, the president of NCLN20, written by Mr. Roger R. Pinnault, contracting officer.

If the Court would just permit me briefly, the middle paragraph says, "If NCLN20 is claiming damages not otherwise specified in the form, please add them to the form in such as way as to clearly identify, quantify, explain and provide documentation of those additional damages, including, but not limited to, alleged lost profit or bad faith."

Rodderd Crawforth, who was a former partner with this major CPA firm and now has his own consulting firm, and is nationally recognized, he went to California. He asked the auditor point blank, "Are you going to audit our claims for lost profits? The answer was, "We have not been instructed to do that."

So we are perplexed at why the government did not undertake to do that.

THE COURT: Well, that may be a basis for an appeal to me that you want to add or a point you might want to make. You've got a Justice Department lawyer, though, I think, who, from what I can see, has been very responsible in this matter. Your prior counsel was a very difficult person to work with, the Court found.

MR. TUCKER: And we reviewed the transcripts and we could do nothing but agree with the Court.

THE COURT: So I think you've got somebody reasonable to work with. You know, I'm not opposed to ADR, but it seems to me that you all ought to be able to find a way of resolving this matter.

Now, with a caveat. I don't know anything about this company, and I don't know whether they have been profitable or not, but it seems to me that that's something the government is going to -- would be relevant to them to know. Have they ongoing been a profitable firm if you're really looking for some compensation for that first year by way of lost profits?

If they have not been, then it seems to me you're going to have a difficult hoe to row with me.

MR. TUCKER: Your Honor, the company has been successful. They have been profitable.

THE COURT: All right. Well, I've just giving you some clues. I don't know a thing about the company.

MR. TUCKER: Yes. I mean, the company has been an ongoing, it does substantial work in this field of guard services, protection services.

THE COURT: Well, they have done some other

work for GSA, as I recall, is that correct?

MR. TUCKER: Pardon?

THE COURT: Have they not done work for the federal government before?

MR. TUCKER: Oh, yes, Your Honor.

THE COURT: That's what I thought.

MR. TUCKER: Yes. Yes.

THE COURT: Well, that's certainly a factor I'm sure the Justice Department counsel will take into consideration because, obviously, maintaining good relationship with the existing vendors is always important.

MR. TUCKER: Your Honor, but, you know, we don't even have a -- you know, by them not addressing --

THE COURT: I understand that, but that's not the Justice Department. That is the local CO made a decision.

MR. TUCKER: Oh, I understand. Okay.

THE COURT: Okay?

MR. TUCKER: Yes.

THE COURT: What I'm trying to tell you is you've got a competent lawyer from the Justice Department who has got to make a value judgment about the importance of this case to their office and to the

agency, and the agency counsel, I don't know, but is on the phone today, and I don't know how much involvement -- was the agency counsel involved with the CO and this all in the sense of --

MR. MICKLE: Your Honor, this is Douglas Mickle again.

I believe so, that the Mr. Malkin did review Mr. Dobb's determinations and findings and conclusions, and I think the reason why lost profits weren't considered in the factor, and Mr. Malkin, please pipe in if I say something completely wrong, that lost profits weren't considered in the equation because I believe the contracting officer did not feel that he was acting in bad faith.

THE COURT: I understand that.

MR. MICKLE: And that's why it wasn't. It's not that they weren't audited. We're just --

THE COURT: No, I understand that.

MR. MICKLE: And the evidence, as the D&F showed, is that, you know, four days before performance very little of the necessary equipment was ordered, so the contracting officer in this case thought that it was an equitable decision at this point to pay them for the costs, or pay NCLN20 for the cost, recognizing that they had performed well for the

government in the past, and put this all behind us, and everybody move forward.

MR. TUCKER: Well, Your Honor, as the Court knows, Your Honor has commented in the transcript on the report, the very detailed investigation that was done by the inspector general, and we believe that that report is meritorious, substantially meritorious, and we believe that there are other --

THE COURT: Well, I'm aware of that, and that's an issue that I'll have to get to some day if we go to trial. The Justice Department knows about that, and I think the smartest thing for me to do is to try to have -- you're in Detroit, is that right?

MR. TUCKER: I'm in Detroit, Your Honor.

THE COURT: And Justice is here, and your expert is in California?

MR. TUCKER: I'm sorry? You said?

THE COURT: Your expert was in California?

MR. TUCKER: No, no. Expert is here in Michigan.

THE COURT: In Michigan.

MR. TUCKER: Yes.

THE COURT: All right. Well, why don't I get off the phone and see if there is some time that the Justice Department folks and the agency people can

meet with you all up in Detroit when your expert is available, and not for deposition, but perhaps his involvement or her involvement might be helpful in this. I just don't know. And see if we can't come to some way of getting closure on this without doing a trial.

Would 60 days be enough time for you all to get that arranged?

MR. MICKLE: I'm sorry. Did you say 15 or 50, Your Honor?

THE COURT: Sixty.

MR. MICKLE: Oh, 60. I'm sorry.

MR. TUCKER: Yes, that's what I thought I heard too.

MR. MICKLE: We can easily do that, Mr. Tucker and I.

THE COURT: Why don't we do that, and then we'll have a status conference in 60 days. Hopefully you will have the case resolved. I mean, we can go through ADR but you all know how to do this.

MR. MICKLE: Well, we can certainly identify issues, Your Honor. You have been very open when we get back to you or Mr. Spangler has been. So if we come up with an issue or we would like to have some assistance, we have identified an issue, say it's a

legal on bad faith or something, or maybe lost profits in a T for C, we'll get back in touch with you expeditiously.

MR. TUCKER: But, Your Honor, I think that we can achieve in good faith pursue what the Court has suggested in terms of us meeting and exploring --

MR. MICKLE: Absolutely.

THE COURT: Well, both parties have to agree to ADR, and you know, I'm of a mind -- I mean, I don't get to vote now, but if we can't get a resolution, to go ahead and set it for early trial and get it done.

MR. MICKLE: I think you're right, Your Honor, and I agree with Mr. Tucker. I think once we get in a room and we just sit down and talk, if we can't agree upon something, we'll agree to disagree. Then we can move quickly to trial.

MR. TUCKER: And Your Honor, in terms of going quickly to trial, we have no interest whatsoever in trying to delay.

THE COURT: No, I understand.

MR. TUCKER: But if there are material, precise discovery matters that we have to pursue because it's necessary in light of our --

THE COURT: Well, you'll get your discovery, but we're going to do it fast.

MR. TUCKER: I understand.

THE COURT: I mean, it seems to me that there is not much -- this case is almost one you can do almost like it's an administrative record, and we'll put you on the docket for the fall, and get it done this year.

MR. MICKLE: Understand. Appreciate it, Your Honor.

MR. TUCKER: Okay.

THE COURT: So that way it is finished, but it seems to me, given the totality of the amount of money at issue and the unusual circumstances around 9/11 and the unusual circumstances having the inspector general's report in here, I respect this is what the CO's perspective on the situation is, and agency counsel's position, all of that, but it seems to me maybe with a -- you all strike me to be rational people, we might be able to find a resolution. And if you can't, I don't think ADR is going to make any difference. I think it would be better to go ahead and go to trial, not waste the time.

MR. TUCKER: I agree with Your Honor.

THE COURT: That's just my view.

MR. TUCKER: I agree with Your Honor on the ADR program.

THE COURT: But if you want to do it, I am perfectly willing to get you an ADR judge to do it. I just don't do ADR. My view is I'm here to try law suits, and I don't have the patience for it.

Okay. Well, that sounds productive, and we'll find a time -- it is not the winter so Detroit can be lovely in the spring.

MR. TUCKER: Your Honor, now, my client is in California.

THE COURT: Oh. Well, I don't know if --

MR. TUCKER: So we'll work it out.

THE COURT: Frankly, I think that the expert and you may be better suited to work out a deal with the Justice Department and agency counsel. I'm not cutting your client out, but it's going to be very expensive. If he wants to come to fly into Detroit, that's his business.

MR. TUCKER: No, I understand. Absolutely.

THE COURT: I remember talking to him once or twice on the phone, but I remember, one, he was hard to get a hold of if my memory serves me correctly.

MR. TUCKER: Your Honor, I would be surprised at that because he's readily available.

THE COURT: Well, it may have been the

counsel that said they weren't available.

MR. TUCKER: Yes, I think it was counsel. It definitely wasn't Mr. Jones because he is always almost 24 hours to us.

THE COURT: All right. Well, he might be able to come in. It seems to me Detroit is the place to do this though, at the least expense to everybody, and you know, see what you guys can work out reasonably in a reasonable way. He wants to continue doing business with you, and you want to keep your relationship well so you've got a lot working for you.

All right?

MR. TUCKER: All right.

THE COURT: We'll see you in 60 days, I hope with good news.

MR. TUCKER: All right. Thank you very much, United States.

MR. MICKLE: Thank you, Your Honor.

THE COURT: I'm just going to hang up. You all can stay on if you want.

MR. MICKLE: Okay, thanks, Your Honor.

MR. TUCKER: Okay. All right. Thank you, Your Honor.

THE COURT: If I disconnect you, the Justice Department will call you back.

MR. TUCKER: Okay.

(Whereupon, at 2:17 p.m., the hearing in the above-entitled matter was concluded.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//