No. 02-1282C
(Judge Braden)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

NCLN20, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO THE GOVERNMENT'S MOTION FOR PARTIAL DISMISSAL WITH ACCOMPANYING APPENDIX

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

STEVEN J. GILLINGHAM
Assistant Director

DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Attorneys For Defendant

OF COUNSEL:

JOEL MALKIN
General Services Administration
Office of Regional Counsel
Chicago, IL

February 18, 2008

# TABLE OF CONTENTS

**PAGE(S)**


DEFENDANT'S BRIEF ........ 2

I. NCLN20 Has Failed To Produce Any Evidence That It Submitted A Proper Claim That Would Enable This Court To Entertain Claims Three And Four Of Its Amended Complaint ........ 2

A. Pursuant To The CDA, A Contractor Claim Must Be Submitted To The Contracting Officer For A Final Decision, And, Where The Claim Exceeds $100,000 As Here, It Must Be Certified By A Person Authorized To Bind The Contractor ........ 3

1. Exhibit K ........ 5

2. Exhibit L ........ 6

3. Exhibit 3A ........ 6

4. Exhibit 6 ........ 6

5. Exhibit 7 ........ 7

6. Exhibit 53 ........ 7

7. Exhibits 55 and 56 ........ 7

8. Exhibit 57 ........ 8

9. Exhibit 58 ........ 8

10. Exhibits 82 and 83 ........ 9

11. Exhibit 84 ........ 9

12. Exhibit 86 ........ 9

13. Exhibit 87 ........ 9

14. Exhibit 88 ........................................................................... 10

15. Exhibit 89 ........................................................................... 10

II. If NCLN20's 2001 Invoices Are CDA Claims As NCLN20 Now Argues, The Statute Of Limitations To File These Claims Expired No Later Than January 2003 ........................................................................... 10

CONCLUSION ........................................................................... 11

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Edelmann v. United States,
76 Fed. Cl. 376 (2007) .......... 3

K&S Constr. v. United States,
35 Fed. Cl. 270 (1996) .......... 10

Reflectone, Inc. v. Dalton,
60 F.3d 1572 (Fed. Cir. 1995) .......... 4

Sarang Corp. v. United States,
76 Fed. Cl. 560 (2007) .......... 3, 4

Todd v. United States,
386 F.3d 1091 (Fed. Cir. 2004) .......... 3

White Buffalo Constr., Inc. v. United States,
28 Fed. Cl. 145 (1992) .......... 11

**STATUTES AND REGULATIONS**

28 U.S.C. § 1491(a)(1) .......... 3

28 U.S.C. § 1491(a)(2) .......... 2

41 U.S.C. § 605(a) .......... 3

41 U.S.C. § 605(a)-(c) .......... 2

41 U.S.C. § 605(c)(1) .......... 4

41 U.S.C. § 609(a) .......... 5

48 C.F.R. § 2.101 .......... 4

# APPENDIX

**Exhibit** **Page #**

K .......... 1

L .......... 8

3A .......... 66

6 .......... 70

7 .......... 73

53 .......... 76

55 .......... 79

56 .......... 86

57 .......... 90

58 .......... 121

82 .......... 124

83 .......... 127

84 .......... 136

86 .......... 150

87 .......... 160

88 .......... 162

89 .......... 164

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **NCLN20, INC.,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | **No. 02-1282C** |
| **v.** | **)** | **(Judge Braden)** |
| | **)** | |
| **THE UNITED STATES,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO THE GOVERNMENT'S MOTION FOR PARTIAL DISMISSAL WITH ACCOMPANYING APPENDIX**

Pursuant to the Rule 5.2(a)(3) of the Rules of the United States Court of Federal Claims ("RCFC"), and this Court's order of January 22, 2008, defendant, the United States, respectfully submits the following brief in reply to plaintiff, NCLN20 Inc.'s ("plaintiff" or "NCLN20") response[1] to our motion to dismiss claims three and four of NCLN20's amended complaint for lack of subject matter jurisdiction. As we demonstrate below, NCLN20's response fails to demonstrate that these claims were properly presented to the Government. Thus, we respectfully renew our request to the Court to dismiss these two claims for lack of jurisdiction. In support of this brief, the United States relies upon NCLN20's response brief, its amended complaint ("Compl.") and the exhibits attached thereto, and the following brief.

[1] NCLN20 filed Plaintiff's Response And Opposing Brief To Defendant's Motion For Partial Dismissal on January 11, 2008, and will be referred to in the reply as "NCLN20's response" or "Pl. Resp."

## DEFENDANT'S BRIEF

### I. NCLN20 Has Failed To Produce Any Evidence That It Submitted A Proper Claim That Would Enable This Court To Entertain Claims Three And Four Of Its Amended Complaint

In our opening motion, we demonstrated that this Court does not possess jurisdiction to entertain NCLN20's third and fourth claims pursuant to the CDA.[2] We explained that although Congress has granted this Court jurisdiction to render judgment upon contract claims arising under the Contracts Disputes Act ("CDA"), 28 U.S.C. § 1491(a)(2), the CDA sets forth a detailed process that a contractor must comport with prior to initiating suit in this Court. See, 41 U.S.C. §§ 605(a)-(c). We then showed that NCLN20 has not properly submitted a claim to the contracting officer for the damages it seeks in claims three and four of NCLN20's amended complaint. Furthermore, we demonstrated that, if in fact NCLN20 has submitted proper claims to the contracting officer, then the CDA's statute of limitations would preclude the Court from entertaining them now.

Throughout NCLN20's response, NCLN20 argues that the United States caused NCLN20 harm. However, NCLN20 has not produced a document evincing the submission of a proper CDA claim for claims three and four, and the documents NCLN20 presumes to be CDA claims clearly are not. Furthermore, assuming these documents were CDA claims, NCLN20 fails to

---

[2] As we explained in our opening brief, these claims seek money damages regarding allegedly unpaid or underpaid invoices that arose from the Battle Creek, Michigan Mega Center Contract #GS05PO1GCD0005 ("Mega Center" contract), awarded on June 16, 1999. Compl. ¶ 82. The Mega Center contract is separate and distinct from the requirements contract, # GS-05PO1-GCD-0009 (the Michigan "Guard Contract"), in which NCLN20 agreed to provide security services as required at Federal buildings in the state of Michigan. Compl. ¶ 21. However, because NCLN20 has not certified and presented these claims to the contracting officer for resolution, this Court does not possess jurisdiction to entertain these claims.

explain how they are not barred by the statute of limitations. Accordingly, claims three and four of NCLN20's amended complaint should be dismissed.

### A. Pursuant To The CDA, A Contractor Claim Must Be Submitted To The Contracting Officer For A Final Decision, And, Where The Claim Exceeds $100,000 As Here, It Must Be Certified By A Person Authorized To Bind The Contractor

It is well-settled that the jurisdiction of the Court of Federal Claims is limited to congressional waivers of sovereign immunity such as through the Tucker Act. Edelmann v. United States, 76 Fed. Cl. 376, 379 (2007). The Tucker Act provides in relevant part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (emphasis added). The Tucker Act itself does not create a right of action against the United States; "[t]herefore, in order to come within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages." Sarang Corp. v. United States, 76 Fed. Cl. 560, 562 (2007) (citing Todd v. United States, 386 F.3d 1091, 1094 (Fed. Cir. 2004)).

Where the plaintiff's claim is based upon a contract with the Government that is subject to the CDA, as here, that statute requires that the plaintiff comply with the mandatory exhaustion requirements "by first submitting a 'claim' to and obtaining a 'final decision' from the contracting officer." Sarang Corp., at 564 (citing 41 U.S.C. § 605(a)). A "claim" is a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the

payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101. Furthermore, a "claim," for the purposes of the CDA, is more than an invoice that is undisputed when submitted. 48 C.F.R. § 2.101 ("A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim."). Additionally, the CDA requires not only a written demand explaining the contractor's claim, but also a demand for "'the payment of money in a sum certain.'" Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575-76 (Fed. Cir. 1995). Finally, if the claim exceeds $100,000, as it does here, the contractor must also certify it in accordance with the CDA. See 41 U.S.C. § 605(c)(1).

The United States Court of Appeals for the Federal Circuit has enforced the strict limits of the CDA as jurisdictional prerequisites to any suit in the Court of Federal Claims. Sarang Corp., at 564-65. NCLN20's response fails to show that these jurisdictional prerequisites were met.

NCLN20 claims an "entitlement to the Mega Center Contract claims for underpaid and unpaid invoices," but the documents it cites to are not proper claims. Pl. Resp. ¶ 4. However, NCLN20 fails to explain how these documents meet the standards established in the CDA for a contractor claim. NCLN20's response also points to several other documents for support for its contention that it submitted a certified claim upon the Mega Center contract. See Pl. Resp. ¶¶ 3, 4, 5. Again, however, NCLN20 does not address the CDA requirements but simply lists them as support of a conclusory statement.

As we show below, an examination of these documents makes clear why NCLN20 glosses over the CDA requirements when citing to these documents – it is because NCLN20

never submitted a properly certified claim which would allow this Court to entertain claims three and four of its amended complaint. Instead, at best, they are simply documents from the contract file that in some instances have references to the Mega Center contract, #GS05PO1GCD0005.

**1. Exhibit K**[3]

Exhibit K to plaintiff's complaint does not contain a proper CDA claim. The documents contained in exhibit K are nothing more than a series of discussions regarding the status of payment regarding invoices for the Mega Center contract. DA 1-7. The documents may be segregated into three parts. The first part contains three NCLN20 Mega Center invoices (#3462, #3463 and #3464); the second is an October 16, 2001 letter from NCLN20's President Steven Jones requesting the contracting officer's, Art Dobbs, assistance in getting these three NCLN20 invoices paid, although they are allegedly incorrect because they were underbilled; and, the third is a letter from Art Dobbs to NCLN20 saying that NCLN20's Service Contract Act ("SCA") based price adjustment proposal for a possible six-month extension period was not accepted by the Government because NCLN20's proposal was too high. None of the documents in Exhibit K are a proper CDA claim. At best, they are routine requests for payment of invoices.[4]

[3] For ease of referencing, we have culled the cited exhibits from NCLN20's complaint and produced them in an appendix to this brief ("DA __").

[4] If these were deemed to be claims, then they still would not be a vehicle for this Court to entertain claims three and four because they would have to have been filed with the Court within 12 months of their denial. 41 U.S.C. § 609(a).

**2. <u>Exhibit L</u>**

Exhibit L to plaintiff's complaint is a series of e-mails and letters between NCLN20 and the contracting officer and the General Services Administration ("GSA") Region 5 Inspector General reporting invoice payment problems resulting from a corrupted spreadsheet used by NCLN20 in calculating invoice amounts due, for the Mega Center. DA 8-65. The documents in Exhibit L do not meet the requirements set forth in the CDA.

**3. <u>Exhibit 3A</u>**

Exhibit 3A is an October 26, 2006 letter from NCLN20's President, Steven Jones, to Art Dobbs, requesting a final decision upon NCLN20's $4.9 million claim for damages. DA 66-69. Exhibit 3a is clearly not a claim or REA in itself, even if it referred to one. It is merely a request to Mr. Dobbs for a final decision upon a previous demand for damages regarding the Michigan Guard Contract, and not the Mega Center.

**4. <u>Exhibit 6</u>**

Exhibit 6 is a June 16, 1999 letter from the contracting officer, Art Dobbs, to NCLN20's President, Steven Jones. DA 70-72. This letter is a notice to NCLN20 of award and to proceed upon the Mega Center Contract, GS05P99GCD0001, with performance beginning on October 1, 1999. The letter indicates that the Mega Center Contract is for a single one-year base period (October 1, 1999 – September 30, 2000), with a single one-year option period (October 1, 2000 – September 30, 2001). This exhibit is not a claim or REA by NCLN20.

**5. Exhibit 7**

Exhibit 7 is a September 7, 1999 unilateral contract modification, changing the Mega Center contract's procurement number from GS05P99GCD0001 to GS05P99GCD0005. DA 73-75. This exhibit is not a claim by NCLN20.

**6. Exhibit 53**

Exhibit 53 is a September 28, 2001 cover letter from the assistant to the contracting officer, Roger Pinnau, to Randy McKay, of Unlimited Security, Inc. ("USI"). DA 73-75. This cover letter served to post assignment records (which are not included in the exhibit) to USI. This letter clearly pertains to USI's Michigan Guard Contract, and has nothing to do with NCLN20.

**7. Exhibits 55 and 56**

Exhibit 55 is a September 20, 2001 letter from Karim Abercrombia of NCLN20 to Art Dobbs. DA 79-85.Although this letter refers to a "request for equitable adjustment," it is actually a price proposal for a Service Contract Act ("SCA")-based price adjustment for a six-month option period that was not exercised. Indeed, Mr. Abercrombia amplifies this point when he correctly refers to NCLN20's request as "our original price proposal for the 6-months extension referenced above." Furthermore, the letter at Exhibit 55 includes attached spreadsheet pages, showing how NCLN20 calculated their United States Department of Labor ("DOL") SCA-based price adjustment proposal.

Exhibit 56 is an October 16, 2001 letter from NCLN20's President, Steven Jones, to Art Dobbs. DA 86-89. This is the same letter that is found in Exhibit K, except it lacks the invoices

referenced and the SCA-based extension period (which was never exercised) price proposal adjustment rejection letter.

Neither of these documents is a properly certified CDA claim. Exhibits 55 and 56 merely pertain to NCLN20's proposed SCA price adjustments (in conformance with new DOL SCA Wage Determinations for the affected area of Calhoun County, Michigan, where the Battle Creek, Michigan Mega Center is located), for the potential (but not actual) six-month extension period, which was never exercised. In other words, these documents reflect only that NCLN20 asked the contracting officer for a per hour increase in the wage rates at the Mega Center due to a projected increase in labor costs, if an upcoming six-month extension period that NCLN20 was being considered for was exercised. That six-month extension period never was exercised, and NCLN20 never performed it. Thus, documents contained in Exhibits 55 and 56 are not proper CDA claims.

**8. Exhibit 57**

Exhibit 57 is virtually identical to Exhibit L, and for the same reason that documents contained in Exhibit L are not proper claims, Exhibit 57 is not a proper CDA claim. See DA 90-120.

**9. Exhibit 58**

This is a January 30, 2002 e-mail from Roger Pinnau to NCLN20's Karim Abercrombia, which is also included as part of Exhibit L. DA 121-123. The e-mail merely states that Mr. Pinnau is unaware of any alleged under billing by NCLN20 upon the Mega Center contract. This e-mail further states that NCLN20 should contact Art Dobb's upon his return to the office,

so NCLN20 can address its concerns with the contracting officer. Exhibit 58 was generated by the Government, and thus could not be a CDA claim by NCLN20.

**10. Exhibits 82 and 83**

Exhibit 82 is an April 18, 2007 letter from the contracting officer, Art Dobbs, to NCLN20's attorney setting forth Mr. Dobb's final decision converting the termination for default of NCLN20's guard contract to a termination for convenience. DA 124-126. Exhibit 83 is an April 13, 2007 Determination & Finding from Mr. Dobbs. DA 127-135. Neither document is a certified claim from NCLN20.

**11. Exhibit 84**

Exhibit 84 is a December 1, 2005 letter from NCLN20's previous counsel to Mr. Dobbs, explaining to Mr. Dobb's NCLN20's guard contract "REA." DA 136-149. This letter is not a certified claim.

**12. Exhibit 86**

Exhibit 86 is a March 29, 2007 letter from Doris White, a supervisor at the Defense Contract Audit Agency ("DCAA"), to Roger Pinnau, stating that DCAA's finding is that NCLN20 had net start-up costs of $46,856 for the Michigan Guard Contract prior to the Government terminating that contract on September 28, 2001. DA 150-159. This letter from DCAA is clearly not a proper CDA claim by NCLN20.

**13. Exhibit 87**

Exhibit 87 is a one-page copy of Modification #2 to GS05P99GCD0005 (NCLN20 Mega Center). DA 160-161. It removes the Government's requirement for a performance bond. Exhibit 87 is not a certified CDA claim from NCLN20.

**14. <u>Exhibit 88</u>**

Exhibit 88 is a September 1, 2000 letter of intent from Art Dobbs to NCLN20's President, Steven Jones, informing Mr. Jones that the contracting officer is giving NCLN20 30 days notice of his intent to exercise NCLN20's first (and only) option upon the Mega Center contract. DA 162-163. The letter sets forth the option period as October 1, 2000 thru September 30, 2001. This letter from the contracting officer is not a proper CDA claim.

**15. <u>Exhibit 89</u>**

Exhibit 89 is a September 20, 2001 letter from Karim Abercrombia of NCLN20, to Art Dobbs, acknowledging Mr. Dobb's rejection of NCLN20's "original price proposal for the 6-months extension referenced above." DA 164-174. Exhibit 89 is simply a letter whereby NCLN20 resubmits a proposal for a price adjustment proposal for an unexercised option. Exhibit 89 is not a certified claim. Exhibit 89 does however show that Exhibits 55 and 56 were not REAs, but simply NCLN20's request that the Government exercise an option with higher hourly prices.

**II. <u>If NCLN20's 2001 Invoices Are CDA Claims As NCLN20 Now Argues, The Statute Of Limitations To File These Claims Expired No Later Than January 2003</u>**

Even if NCLN20's routine submission of invoices in 2001 are deemed to be claims cognizable pursuant to the CDA, these claims still must be dismissed, because the contracting officer's statement to NCLN20 that the Government did not owe NCLN20 any money upon the contract was made on January 30, 2002. Compl. ¶ 88. Thus, by NCLN20's own admission, the putative final decision of the contracting officer occurred nearly six years ago. However, it is well settled that a disappointed contractor must file its complaint within 12 months of the date it receives the contracting officer's final decision. <u>See</u> <u>K&S Constr. v. United States</u>, 35 Fed. Cl.

270, 277 (1996); see also White Buffalo Constr., Inc. v. United States, 28 Fed. Cl. 145, 147 (1992) (filing one day after the expiration of the 12 month period rendered the filing untimely "b[]ecause Congress legislatively mandated the twelve-month time period, it cannot be extended out of sympathy for particular litigants, even if this effects a seemingly harsh result[.]"). Accordingly, even if the documents at issue were proper claims, the Court should dismiss claims three and four of NCLN20's amended complaint.

## CONCLUSION

For the foregoing reasons, and those set forth in our opening brief, the United States respectfully requests that the Court dismiss NCLN20's third and fourth claims in its amended complaint for lack of subject matter jurisdiction.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

OF COUNSEL:

JOEL MALKIN
General Services Administration
Office of Regional Counsel
Chicago, IL

s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0383
Fax: (202) 353-7988
Attorneys for Defendant

DATED: February 18, 2008

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on February 18th, 2008, a copy of the foregoing **"DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO THE GOVERNMENT'S MOTION FOR PARTIAL DISMISSAL WITH ACCOMPANYING APPENDIX"** with its appendix was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Douglas K. Mickle
Douglas K. Mickle