# EXHIBIT

# 3A

# REQUEST FOR FINAL DECISION

10/26/06

Arthur S. Dobbs, Contracting Officer
U.S. Department of Homeland Security
Federal Protective Service-Region 5
230 South Dearborn Street
Suite 3540 (5PSAC)
Chicago, IL 60604
U.S. Immigration and
Customs Enforcement

Dear Sir:

On 8/31/05, NCLN20, Inc. submitted a claim for breach of the Contract in the amount of $4,904,074.00 to Contracting Officer Arthur S. Dobbs, mischaracterized as an equitable adjustment. On 12/1/05, its counsel, Malyszek & Malyszek submitted a letter to CO Dobbs, with an attached Break Down of the Monetary Damages Claims of $4,904,074.00. By order of 10/3/05, Judge Braden in NCLN20, Inc. v U.S., U.S. Federal Court of Claims #02-1282C, issued an order staying the action, pending CO Dobbs' final adjudication of NCLN20's Monetary Damages Claims.

Pursuant to the Status Reports submitted to the Court, NCLN20 herewith submits its Restated, Modified and Amended Claims for Monetary Damages for Breaches of Contract, together with citation of authorities, additional Data and a Legal Brief.

Since early 2006, the USA informed NCLN20's counsel that Defense Contract Audit Agency has agreed to conduct an independent audit and is awaiting receipt of NCLN20's Restated, Modified and Amended Claims for Monetary Damages for Breaches of Contract and additional substantiating Data and access to NCLN20's accounting records.

For the foregoing reasons, it is requested that the Contracting Officer, within the next sixty (60) days, either (1) meet with NCLN20 through its of record counsel,

Clarence B. Tucker, Sr., PLLC/Clarence B. Tucker, Esq., for the purpose of settling its claims and executing the necessary supplemental agreements; or (2) issue a final decision from which an appeal may be taken under the "Disputes" clause of the Contract.

In the event that Contracting Officer Arthur Dobbs fails to take one of the courses of action outlined above, NCLN20, Inc. must conclude that CO Dobbs intends to deny the claim and, accordingly, NCLN20, Inc. will appeal the failure or refusal to issue a final decision to the United States Court of Federal Claims, via amendment to its complaint in NCLN20 vs. U.S., U.S. Ct Fed Cl #02-1282C.

Very truly yours,

**NCLN20, INC.**

By: ____________________

**Stephen Jones**
Its CEO

## CERTIFICATE OF SERVICE

It is hereby certified that on the 27th day of October, 2006, a copy of NCLN20, Inc.'s Restated, Supplemented and Amended Claims for Monetary Damages for Breaches of Contract, Request for Final Decision, Appendices I and II Supporting Data were submitted to Arthur S. Dobbs, Contract Officer, U.S. Department of Homeland Security, Federal Protective Service-Region 5, at 230 South Dearborn Street, Suite 3540 (5PSAC), U.S. Immigration and Customs Enforcement, Chicago ILL 60604.

____________________
Holly Taylor

# CERTIFICATION OF CLAIM FOR MONEY DAMAGES DUE TO BREACH OF CONTRACT

of

**NCLN20, Inc.**

concerning

**Contract No. GS05P01GCD0009**

---

I, Stephen Jones, President of NCLN20, Inc., certify that:

a. The attached *Restated, Supplemented and Amended Monetary Claims for Breaches of Contract #GS05PO1GCD0009* is made in good faith;

b. The supporting data is accurate and complete to the best of my knowledge and belief;

c. The amount requested accurately reflects the contract adjustment for which NCLN20, Inc. believes the government is liable; and

d. I am duly authorized to certify this claim on behalf of the Company.

STEPHEN JONES
President
NCLN20, Inc.

Date: October 26, 2006

# EXHIBIT
# 6

SCHEDULE 6

*NCLN20 v. The United States of America*
*CALCULATION OF CHANGE ORDER LABOR COST AND SALES VALUE CALCULATIONS*

ASSUMPTIONS: (A)

Non-Supervisory Armed & Armed Special Labor:
General & Administration (B) 4.00%
Profit (B) 4.00%

Correcting for Mistake In Bid: (C) YES Exhibit E

Change Order Analysis: (D) YES Exhibit F

| | | | | SUPERVISORY | | NON-SUPERVISORY | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Supporting Data | Project Manager | Armed | Armed Special Temp. Svcs. | Armed | Unarmed | Armed Special Temp. Svcs. | Unarmed Special Temp. Svcs. | TOTAL |
| Hourly Rate | (E) | Exhibit B & C | $ 24.10 | $ 15.90 | $ 15.90 | $ 15.40 | $ 8.78 | $ 15.40 | $ 8.78 | |
| Gross Labor Hours Per Man | (F) | Exhibit B | 2,080 | 2,080 | 2,080 | 2,080 | 2,080 | 2,080 | 2,080 | 14,560 |
| Annualized Salary | | | $ 50,128 | $ 33,072 | $ 33,072 | $ 32,032 | $ 18,262 | $ 32,032 | $ 18,262 | $ 216,861 |
| Change Order | (G) | Schedule 7 | 0.0000 | 4.0000 | 0.0000 | 24.0000 | 3.0000 | 0.0000 | 0.0000 | 31.0000 |
| Total Full Time EQ | | | 0.0000 | 4.0000 | 0.0000 | 24.0000 | 3.0000 | 0.0000 | 0.0000 | 31.0000 |
| Total Gross Labor Hours | (H) | Exhibit B | - | 8,320 | - | 49,920 | 6,240 | - | - | 64,480 |
| Total Gross Labor Cost | (I) | Exhibit B | $ - | $ 132,288 | $ - | $ 768,768 | $ 54,787 | $ - | $ - | $ 955,843 |
| Labor Loss Hours | (J) | | | | | | | | | |
| Vacation | | Exhibit B | - | 320 | - | 1,920 | 240 | - | - | 2,480 |
| Holiday | | Exhibit B | - | 320 | - | 1,920 | 240 | - | - | 2,480 |
| Sick Pay | | Exhibit B | - | 254 | - | 1,526 | 191 | - | - | 1,972 |
| Total Labor Loss Hours | | | - | 894 | - | 5,366 | 671 | - | - | 6,932 |
| Productive Labor Hours | (K) | | - | 7,426 | - | 44,554 | 5,569 | - | - | 57,548 |
| Productive Labor Cost | (L) | | $ - | $ 118,067 | $ - | $ 686,125 | $ 48,898 | $ - | $ - | $ 853,090 |
| Workman's Compensation | (M) 2.00% | Exhibit B &D | - | 2,646 | - | 15,375 | 1,096 | - | - | 19,117 |
| General Liability | (N) 3.00% | Exhibit B | - | 3,969 | - | 23,063 | 1,644 | - | - | 28,675 |
| Total Insurance | | | - | 6,614 | - | 38,438 | 2,739 | - | - | 47,792 |
| FICA- Social Security | (O) 6.20% | Exhibit B & D | $ - | $ 8,202 | $ - | $ 47,664 | $ 3,397 | $ - | $ - | $ 59,262 |
| FUI | (P) 0.80% | Exhibit B & D | - | 224 | - | 1,344 | 168 | - | - | 1,736 |
| SUI | (Q) 2.70% | Exhibit B & D | - | 1,026 | - | 6,156 | 770 | - | - | 7,952 |
| FICA- Medicare | (O) 1.45% | Exhibit B & D | - | 1,918 | - | 11,147 | 794 | - | - | 13,860 |
| Total Payroll Tax | | | $ - | $ 11,370 | $ - | $ 66,311 | $ 5,129 | $ - | $ - | $ 82,810 |
| Total Payroll Tax & Ins. | | | $ - | $ 17,984 | $ - | $ 104,749 | $ 7,868 | $ - | $ - | $ 130,602 |
| Equipment & Uniforms | (R) | Exhibit B | $ - | $ 7,541 | $ - | $ 9,014 | $ 4,836 | $ - | $ - | $ 21,391 |
| Vacations, Holiday & Sick | (S) | Exhibit B | - | 14,221 | - | 82,643 | 5,890 | - | - | 102,753 |
| Health and Welfare | (T) $2.02 | Exhibit B & C | - | 16,806 | - | 100,838 | 12,605 | - | - | 130,250 |
| Radio & Equipment | (U) | Exhibit B | - | 3,232 | - | 500 | 744 | - | - | 4,476 |
| Total Fringe Benefits & Equip | | | $ - | $ 41,800 | $ - | $ 192,995 | $ 24,074 | $ - | $ - | $ 258,870 |
| Total Labor, Fringes, PT&I, Equipment | | | $ - | $ 177,852 | $ - | $ 983,870 | $ 80,840 | $ - | $ - | $ 1,242,561 |
| Labor & Fringe Cost per Productive Hour | (V). | | $ - | $ 23.95 | $ - | $ 22.08 | $ 14.52 | $ - | $ - | |
| Project Management | (W) | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total | | | $ - | $ 177,852 | $ - | $ 983,870 | $ 80,840 | $ - | $ - | $ 1,242,561 |
| General & Administrative | (X) 4.00% | Exhibit B | | 7,114 | - | 39,355 (Y) | 3,234 | - (Y) | - | 49,702 |
| Profit | (X) 4.00% | Exhibit B | | 7,114 | - | 39,355 (Y) | 3,234 | - (Y) | - | 49,702 |
| Evaluated Total | | | $ - | $ 192,080 | $ - | $ 1,062,579 | $ 87,307 | $ - | $ - | $ 1,341,966 |
| Annual AmountChange Order Sales | | | | $ 192,080 | $ - | $ 1,062,579 | $ 87,307 | $ - | $ - | $ 1,341,966 |

Note:
Source: *NCLN20, Inc. Labor Cost Build Up (Referenced GS05PO1GCD0009 at bottom of pages).* See Exhibit B for supporting data and additional documentation.
(A) This analysis is calculated correcting for all mistakes in the bid including the computational error in determining hourly rates for non-supervisory armed guards and armed special guards, the profit and general and administrative rate on non-supervisory armed guards and armed special guards, and the allocation of project manager costs. See Exhibit E for additional documentation, communication, and calculations related to the mistakes in bid made by Richard Brown, bid preparer.

(B) Percentage rate used to calculate General and Administrative and Profit on non-supervisory armed and armed special labor. In NCLN20's initial bid to the State of Michigan, it calculated these amounts based on a 1% rate opposed to the 4% rate it intended to use due to a spreadsheet error. We have corrected for that mistake in this analysis.

(C) Indicates that current calculation is correcting for the Mistake in Bid (MIB) made by Richard Brown. Correcting for the MIB changes the labor rate for non-supervisory armed and armed special from $14.88 to $15.40 and the supervisory labor rate from $15.38 to $15.90. See Exhibit E for additional documentation

(D) Indicates whether analysis is taking into consideration change order work of the additional 27 guards requested in federal buildings across the State of Michigan after the September 11th attacks. See *Labor- Change Order Personnel Allocation* (Schedule 7) and Exhibit F for additional documentation.

(E) Hourly Wage is calculated based on information contained within the U.S. General Services Administration Federal Protective Service Invitation for Bid GS05P01GCD0009.
Section J-2 lists the U.S. Department of Labor Wage Determinations- see Exhibit C for supporting data. NCLN20 averaged Guard I and Guard II wage rates as set forth in the DOL's Wage Rate Determination for counties in which posts were specified. Guard I rates were used with respect to non-supervisory unarmed labor. Guard II rates were used with respect to non-supervisory armed labor. The wage rate for supervisory labor utilized the Guard II rate and added an additional $0.50 per hour.

(F) Basic number of work hours in a year- 40 hours per week multiplied by 52 weeks per year.

(G) Full Time Equivalent Rate is calculated based on the additional Change Order work set forth by the Government See *Labor Change Order Personnel Allocation* (Schedule 7).

SCHEDULE 6

*NCLN20 v. The United States of America*
*CALCULATION OF CHANGE ORDER LABOR COST AND SALES VALUE CALCULATIONS*

(H) Total Gross Labor hours is calculated by multiplying Gross Labor Hours per Man by the Full Time Equivalent Rate.

(I) Total Gross Labor Cost is calculated by multiplying the Full Time Equivalent rate by the Annualized Salary.

(J) Per conversations with Karim Abercrombia of NCLN20, Labor Loss Hours include 80 hours of vacation, 80 hours of holiday and 64 hours of sick pay per year.

(K) Productive Labor Hours are the amounts set forth in the government's invitation for bid.

(L) Productive Labor Cost is calculated by multiplying Productive Labor Hours by the hourly rate.

(M) Workmen's Compensation rate of 2.00% is reasonable based on quotes received from Jackson Park Agency for "Police Officers" in the State of Michigan. See Exhibit D for supporting data.

(N) Per Karim Abercrombia, General Liability Insurance was calculated based on a 3.00% rate.

(O) 2001 Standard Federal Tax Rates. The base amount for FICA (Social Security) in 2001 was $80,400. There is no limit on FICA (Medicare). See Exhibit D for supporting data.

(P) The federal unemployment insurance rate for 2001 was .80% with an applicable base amount of $7,000. See Exhibit D for supporting data.

(Q) 2.7% is the state unemployment insurance rate used for a company during its first two years of business until it has paid into the unemployment benefits system. After two years, the company is assigned an annual rate based on the amount of charges it has for unemployment benefits; the more charges against unemployment the higher its tax rate will be. The maximum amount of income subject to unemployment insurance taxation in the State of Michigan is $9,500 for 2001. See Exhibit D for supporting data.

(R) Per Karim Abercrombia, the maximum annual uniform allowance was $350 per year or $0.18 per productive labor hour.

(S) Vacation, holiday and sick pay (as fringe benefits) is calculated by multiplying Total Labor Loss Hours by the Hourly Rate.

(T) The 2001 Department of Labor's Health and Welfare Rate- See Exhibit C for supporting data.

(U) Per Karim Abercrombia, amounts shown represent expected radio and equipment costs for guards. We have also taken additional employee costs such as cell phones and training material. Such amounts are reflected in the *Lost Profits Matrix* (Schedule 3) and in *Other Direct Costs* (Schedule 10).

(V) Labor & Fringe Cost is calculated by multiplying the Total Labor, Fringes, Equipment, Payroll Taxes, Insurance and Equipment by Productive Labor Hours.

(W) Project Management Allocation allocates the cost of the project manager to all categories of labor. NCLN20 allocated $60,888 of Project Manager costs to the different categories of labor.

(X) For all categories of labor, except non-supervisory armed and special armed guards, a 4% rate was used to calculate profit and general and administrative costs.

(Y) Profit and general and administrative for non-supervisory armed and armed special labor was calculated by multiplying the Total Labor Cost by 4% correcting for the mistake in bid that only allocated a 1% rate to these two categories of labor.

# EXHIBIT 7

SCHEDULE 7

*NCLN20 v. The United States of America*

*LABOR - CHANGE ORDER PERSONNEL ALLOCATION*

| | | Supporting Data | Full Time EQ | Additional Change Order Labor | Total Contract Labor |
|---|---|---|---|---|---|
| Project Manager | | Exhibit B | 1.0000 | 0.00000 | 1.00000 |
| Armed | | Schedule 5 | 21.5517 | 4.00000 | 25.55172 |
| Armed Special Temp. | | Schedule 5 | 1.0776 | 0.00000 | 1.07759 |
| Total Full Time Equivalents- Supervisory | (A) | | 23.6293 | 4.00000 | 27.62931 |
| Armed | | Schedule 5 | 113.1466 | 24.00000 | 137.14655 |
| Unarmed | | Schedule 5 | 14.0086 | 3.00000 | 17.00862 |
| Armed Special Temp. | | Schedule 5 | 4.3103 | 0.00000 | 4.31034 |
| Unarmed Speical Temp. | | Schedule 5 | 2.1552 | 0.00000 | 2.15517 |
| Total Full Time Equivalents- Non- Supervisory | (A) | | 133.6207 | 27.00000 | 160.62069 |
| TOTAL FULL TIME EQUIVALENTS | | | 157.2500 | 31.00000 | 188.25000 |

RATIO CALCULATIONS

| | | | |
|---|---|---|---|
| Armed Guard Percentage | (B) | 89% | |
| Additional Guards required by C.O. | (C) | 27.0000 | |
| Additional full time employees per C.O. | | 24.0254 | Round to 24 |
| Management to Employee Ratio | (D) | 6.6549 | |
| Additional Guards required by C.O. | (C) | 27.0000 | |
| Additional Supervisors Required | | 4.0572 | Round to 4 |
| Additional full time employees per C.O. | | 31.0572 | |

Note:

(A) See *Calculation of Full Time Equivalent Rate Allocating 290,000 Hours* (Schedule 5).

(B) Calculated as 113.1466 ÷ (113.1466+14.0086)

DA 074

SCHEDULE 7

*NCLN20 v. The United States of America*

*LABOR - CHANGE ORDER PERSONNEL ALLOCATION*

(C) "010924-NCLN20-New-SSA-MI-Posts-Fax-fm-AD.pdf." File included on CD-ROM within Responses from the Government, Production of Documents- dated April 2004. See **Exhibit F** for supporting data.

(D) Accepted formula for determining the Management to employee ratio, [N+(S-1)/S].
"N" being the number of non-supervisory employees and "S" being the number of supervisory employees. The minus one represents a subtraction for executive employees which for the purposes of this analysis we are not considering. See **Exhibit F** for additional documentation.

DA 075

# EXHIBIT

# 53

u519-28.doc

GSA

General Services Administration - Great Lakes Region 5
Federal Protective Service, 5PSAC
230 South Dearborn Street, Suite 3540
Chicago, IL 60604

TX 312.886-3815
Fax 312.353-0143
Net roger.pinnau@gsa.gov

September 28, 2001

Sent Federal Express
Airbill #7901-7219-3710

Mr. Randy McKay
President
Unlimited Security Inc.
Patrick V. McNamara Federal Building
477 Michigan Avenue
Detroit, MI 48226

Dear Mr. McKay:

This regards General Services Administration (GSA) Contract #GS05P01GCD0009 for the performance of armed and unarmed uniformed security guard services in the State of Michigan.

Attached for your information are post assignment records which provide information that is specific to the post location. We have also included the appropriate Act numbers and contract performance period. You can expect the appropriate Task Orders to be issued to your company within the next week. Each Task Order will contain the same information as the records.

Provision of this documentation is made on a courtesy basis to ensure you have updated information in hand as you start up guard service effective Monday morning, October 1, 2001.

I can be reached at the above referenced telephone number if you require additional information.

Sincerely,

ROGER R. PINNAU
Contracting Officer

Enclosures

Official File 5PSAC (GS05P01GCD0009)
Reading File 5PSAC
5PSAC(Cohen/Pinnau)

5PSAC:TGCohen:9/28/01 3-8211

# EXHIBIT

# 55

NCLN20
Since 1990
Post Office Box 69
Fax (925) 299-2931
Lafayette, CA 94549
Telephone (925) 299-294?

September 20, 2001

General Services Administration
Federal Protective Services (5PSAM)
Mr. Art Dobbs, Contracting Officer
230 South Dearborn Street (Suite 3540)
Chicago, IL 60604-1696

Subject: Request for Equitable Adjustment for wage and benefit increases for 6-months Extension for contract GS05P99GCD0005 for Dispatch Operator Services at the Battle Creek Megacenter from 10/01/2001 through 03/31/2002

Dear Mr. Dobbs;

We are in receipt of your correspondence dated 09/19/2001 in which your office rejected our original cost proposal for the 6-months extension referenced above.

Your letter refences that we are allowed to make an adjustment to our prices (rates) based only on the results of revisions to the prevailing labor rates provided by the Secretary of Labor. To that effect, your letter included a copy of the U.S. Department of Labor Wage Determination No. 94-2277, Revision 14, dated May 31, 2001. Based on the increases in the wages ($0.53 per hour) and benefits ($0.63 per hour) listed in the new wage determination, we have prepared an equitable adjustment request in this regard in conformance with FAR Clause 52.222-43. We respectfully request that the hourly pricing for providing Basic Services under this contract be increased by $1.32 per hour for the Dispatch Operators and $1.32 for the Dispatch Operator Supervisors. Additionally, we respectfully request that the hourly pricing for providing Short Term / Emergency Services under this contract be increased by $1.65 per hour for the Dispatch Operators and $1.65 for the Dispatch Operator Supervisors. Attached to this letter, you will find a two-page spreadsheet along with a three-page narrative explaining our basis for this equitable adjustment request.

Please, review the enclosed. If you have any questions in this regard, please do not hesitate to contact me at your earliest convenience. As always we are looking forward to hearing from you. As indicated, we are looking forward to another six months of providing services to GSA under contract number Contract Number GS05P99GCD0005 for Dispatch Operator Services at the Battle Creek Megacenter.

Sincerely,

Karim Abercrombia
Chief of Operations

Enclosure

Schedule 1-A
Request for Equitable Adjustment - Basic Services
due to New Wage Determinations with higher wages and higher H&W benefits
for General Services Administration, Federal Protective Service (5PSAM)
to provide Dispatch Operator Services at Battle Creek Megacenter
under Contract No. GS05P99GCC0005 for the six (6) months extension from 10/01/2001 - 03/31/2002

Hourly REA Increase Analysis for GSA for Battle Creek Megacenter; WD 1994-2277, Rev. 14, dated 05/31/2001

| 1<br>Description | 2<br>Wage Rate | 3<br>H&W Rate | 4<br>Increase per Hr | 5<br>FICA 7.65% | 6<br>FUTA 0.80% | 7<br>SUI 2.30% | 8<br>W/C 1.00% | 9<br>Sub-Total Increase | 10<br>Holiday 11.00 | 11<br>Vacation 10.00 | 12<br>Hourly Increase |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Dispatch Operator / Alarm Monitor** | | | | | | | | | | | |
| *Wages* | | | | | | | | | | | |
| Base Year | $ 15.02 | | | | | | | | | | |
| Option I | $ 15.55 | | | | | | | | | | |
| Difference | $ 0.53 | $ - | $ 0.53 | $ 0.0405 | $ 0.0042 | $ 0.0148 | $ 0.0053 | $ 0.5948 | $ 0.0252 | $ 0.0229 | $ 0.6429 |
| *Health & Welfare* | | | | | | | | | | | |
| Base Year | | $ 1.39 | | | | | | | | | |
| Option I | | $ 2.02 | | | | | | | | | |
| Difference | $ - | $ 0.63 | $ 0.63 | $ - | $ - | $ - | $ - | $ 0.6300 | $ 0.0267 | $ 0.0242 | $ 0.6809 |
| *Totals* | | | $ 1.16 | $ 0.0405 | $ 0.0042 | $ 0.0148 | $ 0.0053 | $ 1.2248 | $ 0.0519 | $ 0.0471 | $ 1.3238 |
| **Dispatch Operator Supervisor** | | | | | | | | | | | |
| *Wages* | | | | | | | | | | | |
| Base Year | $ 15.37 | | | | | | | | | | |
| Option I | $ 15.90 | | | | | | | | | | |
| Difference | $ 0.53 | $ - | $ 0.53 | $ 0.0405 | $ 0.0042 | $ 0.0148 | $ 0.0053 | $ 0.5948 | $ 0.0252 | $ 0.0229 | $ 0.6429 |
| *Health & Welfare* | | | | | | | | | | | |
| Base Year | | $ 1.39 | | | | | | | | | |
| Option I | | $ 2.02 | | | | | | | | | |
| Difference | $ - | $ 0.63 | $ 0.63 | $ - | $ - | $ - | $ - | $ 0.6300 | $ 0.0267 | $ 0.0242 | $ 0.6809 |
| *Totals* | | | $ 1.16 | $ 0.0405 | $ 0.0042 | $ 0.0148 | $ 0.0053 | $ 1.2248 | $ 0.0519 | $ 0.0471 | $ 1.3238 |

*Schedule 1-B*
*Request for Equitable Adjustment - Short Term Emergency Services*
*due to New Wage Determinations with higher wages and higher H&W benefits*
*for General Services Administration, Federal Protective Service (5PSAM)*
*to provide Dispatch Operator Services at Battle Creek Megacenter*
*under Contract No. GS05P99GCC0005 for the six (6) months-extension from 10/01/2001 - 03/31/2002*

*Hourly REA Increase Analysis for GSA for Battle Creek Megacenter; WD 1994-2277, Rev. 14, dated 05/31/2001*

| 1 Descrip-tion | 2 Overtime Wage Rate | 3 H&W Rate | 4 Increase per Hr | 5 FICA 7.65% | 6 FUTA 0.80% | 7 SUI 2.80% | 8 W/C 1.00% | 9 Sub-Total Increase | 10 Holiday 11.00 | 11 Vacation 10.00 | 12 Hourly Increase |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Dispatch Operator / Alarm Monitor** | | | | | | | | | | | |
| *Wages (Based on Overtime due Short-Term-Emergency Services character* | | | | | | | | | | | |
| Base Year | $ 22.53 | $ 22.53000 | | | | | | | | | |
| Option I | $ 23.33 | $ 22.53000 | | | | | | | | | |
| Difference | $ 0.80 | $ - | $ 0.80 | $ 0.0612 | $ 0.0064 | $ 0.0224 | $ 0.0080 | $ 0.8980 | $ 0.0380 | $ 0.0345 | $ 0.9705 |
| *Health & Welfare* | | | | | | | | | | | |
| Base Year | | $ 1.39 | | | | | | | | | |
| Option I | | $ 2.02 | | | | | | | | | |
| Difference | $ - | $ 0.63 | $ 0.63 | $ - | $ - | $ - | $ - | $ 0.6300 | $ 0.0267 | $ 0.0242 | $ 0.6809 |
| *Totals* | | | $ 1.43 | $ 0.0612 | $ 0.0064 | $ 0.0224 | $ 0.0080 | $ 1.5280 | $ 0.0647 | $ 0.0587 | $ 1.6514 |
| **Dispatch Operator Supervisor** | | | | | | | | | | | |
| *Wages (Based on Overtime due Short-Term Emergency Services character* | | | | | | | | | | | |
| Base Year | $ 23.05 | | | | | | | | | | |
| Option I | $ 23.85 | | | | | | | | | | |
| Difference | $ 0.80 | $ - | $ 0.80 | $ 0.0612 | $ 0.0064 | $ 0.0224 | $ 0.0080 | $ 0.8980 | $ 0.0380 | $ 0.0345 | $ 0.9705 |
| *Health & Welfare* | | | | | | | | | | | |
| Base Year | | $ 1.39 | | | | | | | | | |
| Option I | | $ 2.02 | | | | | | | | | |
| Difference | $ - | $ 0.63 | $ 0.63 | $ - | $ - | $ - | $ - | $ 0.6300 | $ 0.0267 | $ 0.0242 | $ 0.6809 |
| *Totals* | | | $ 1.43 | $ 0.0612 | $ 0.0064 | $ 0.0224 | $ 0.0080 | $ 1.5280 | $ 0.0647 | $ 0.0587 | $ 1.6514 |

***Narrative to Request for Equitable Adjustment***
***Due to new wage determination which incorporates higher wages & benefits***
***As included in DOL Wage Determination No. 94-2277, Revision 14, dated 05/31/2001***
***For General Service Administration, Federal Protective Services***
***Under Contract No. GS05P99GCD0005***
***For Six-Months Extension from 10/01/2001 through 03/31/2002***

The following two spreadsheets provides an overview of the methodology used to arrive at this Request for Equitable Adjustment as a result of increases in wages and benefits incorporated through new Wage Determination into the above referenced contract per separate correspondence from GSA dated 09/19/2001. The first spreadsheet (Schedule 1-A) provides an overview of the REA for the "Basic Services" portion of the contract. The second spreadsheet (Schedule 1-B) provides an overview of the REA for the "Short Term Emergency Services" portion of the contract and is based on the need for overtime pay for the personnel providing the "Short Term Emergency Services)."

The format and make-up of the two spreadsheets is fairly similar. Each spreadsheet is divided into two major sections which each represent the two major labor categories and CLINs under this contract namely, Dispatch Operators / Alarm Monitors and Dispatch Operator Supervisors. Each spreadsheet consists of 12 columns which represent the following information:

Column 1: Provides a description of the labor category / year analyzed.

Column 2: Provides an overview of the wage rates included in the wage determinations at the beginning of this contract and the wage rates applicable during the six-months extension period of this contract based on the new wage determination. An overtime rate of 150% times the base rate is used in Schedule 1-B to denote that it is anticipated that the provision of Short Term Emergency Services will result in overtime pay.

Column 3: Provides an overview of the H&W rates included in the wage determinations at the beginning of this contract and the H&W rates applicable during six-months extension period of this contract based on the new wage determination.

Column 4: Provides the total increase per hour in wages and H&W benefits from the base year wage determinations to those applicable in six-months extension period.

Column 5: Represents the FICA taxes increase, calculated at 7.65% of the increase shown in Column 4. This value is calculated by taking the value of column 4, multiplying this value by 7.65% and rounding the resulting value to 2 decimals. FICA taxes have only been applied to the increase in wages and not to the increase in H&W benefits since these benefits are paid into a separate benefit plan.

Column 6: Represents the FUTA taxes increase, calculated at 0.8% of the increase shown in Column 4. This value is calculated by taking the value of column 4, multiplying this value by 0.8% and rounding the resulting value to 2 decimals. FUTA taxes

have only been applied to the increase in wages and not to the increase in H&W benefits since these benefits are paid into a separate benefit plan.

Column 7: Represents the SUI (SUTA) taxes increase, calculated at 2.8% of the increase shown in Column 4. This value is calculated by taking the value of column 4, multiplying this value by 2.8% and rounding the resulting value to 2 decimals. SUI taxes have only been applied to the increase in wages and not to the increase in H&W benefits since these benefits are paid into a separate benefit plan.

Column 8: Represents the Worker's Compensation Insurance increase, calculated at 1.00% of the increase shown in Column 4. This value is calculated by taking the value of column 4, multiplying this value by 1.00% and rounding the resulting value to 2 decimals. Worker's Compensation Insurance has only been applied to the increase in wages and not to the increase in H&W benefits since these benefits are paid into a separate benefit plan.

Column 9: Represents a sub-total value of the wage and benefit increase plus all increases in applicable taxes and insurances. This value is arrived at by adding columns 4 through 8.

Column 10: Represents the increase in Holiday pay as a result of the increase in wages and benefits. This value is calculated at 11 holidays times 8 hours per day divided by 2,080 annual work hours for a Full-Time-Equivalent employee multiplied by the sub-total increase presented in column 9.

Column 11: Represents the increase in Vacation pay as a result of the increase in wages and benefits. This value is calculated at 10 vacation days times 8 hours per day divided by 2,080 annual work hours for a Full-Time-Equivalent employee multiplied by the sub-total increase presented in column 9.

Column 12: Represents a total cost of the wage and benefit increases plus all increases in applicable taxes and insurances and vacation and holiday cost. This value is arrived at by adding columns 9 through 11.

Based on this analysis NCLN20, Inc. respectfully requests an equitable adjustment in this regard as follows:

| *Labor Classification / CLIN* | *Requested increases in this Request for Equitable Adjustment due to wage & benefit increases* |
|---|---|
| Basic Services, Dispatch Operator | $1.32 per hour |
| Basic Services, Dispatch Operator Supervisor | $1.32 per hour |
| Short Term Emergency Services, Dispatch Operator | $1.65 per hour |
| Short Term Emergency Services, Dispatch Operator Supervisor | $1.65 per hour |

After implementation of these requested pricing increases, the newly proposed hourly prices for this project are expected to be as follows:

| *Labor Classification / CLIN* | *Hourly Rates per the original contract* | *REA increases due to higher wages & benefits* | *Proposed Hourly Rates after REA Increase* |
|---|---|---|---|
| Basic Services, Dispatch Operator/ Alarm Monitor | $24.76 | $1.32 | $26.08 |
| Basic Services, Dispatch Operator Supervisor | $26.74 | $1.32 | $28.06 |
| Short Term Emergency Services, Dispatch Operator/ Alarm Monitor | $24.76 | $1.65 | $26.41 |
| Short Term Emergency Services, Dispatch Operator Supervisor | $26.74 | $1.65 | $28.39 |

# EXHIBIT

# 56

NCLN20
Since 1990

Post Office Box 69
Lafayette, CA 94549

Telephone (925) 299-2906
Fax: (925) 299-2931

# FAX COVER SHEET

**DATE:** October 16, 2001

**NUMBER OF PAGES:** 8
(Including Cover Sheet)

**DELIVER TO:** Mr. Art Dobbs, Senior Contracting Officer,
GSA/FPS, Great Lakes Region

**COMPANY:** GSA/FPS
**TELEPHONE:** (312) 353-5003

**FAX:** (312) 353-0143

**FROM:** Steve Jones (925) 299-2978

**COMMENTS:** Good Afternoon Art! Please find the information from my Accounting/Receivables Department, regarding, GS05P01GCD0001/5, (Battle Creek Alarm Monitoring and Operation of Public Safety-Related Telecommunication and Security Systems Services).
It is always a pleasure to hear from you.

Thank you,

Stephen Jones
NCLN20, A professional services company

1

NCLN20
Since 1990
Post Office Box 69
Lafayette, CA 94549
Telephone (925) 299-2906
Fax: (925) 299-2931

October 16, 2001

Sent via FAX
& Overnight Fed-EX
# 8296 8576 1810

Mr. Art Dobbs
Contracting Officer
GSA-FPS (5PSAM)
230 South Dearborn St. (3540)
Chicago, IL 60604-1696

Subject: <u>**Decision to Not Extend Contract GS05P99GCD0001/5 Battle Creek Alarm Monitoring and Operation of Public Safety-Related Telecommunication and Security Systems.**</u>

Dear Art,

I am writing to beg your assistance in paying the proceeds of our final invoices involving services performed September1, 2001 to September 3, 2001:

1. 3462 amount $38,785.98,
2. 3463 amount $38,785.98,
3. 3464 amount $20,203.33,

Also, please find enclosed a copy of our bank record dated: 10/15/01, which shows that these invoices had been wired to our account on 10/11/01, but withdrawn 10/12/01, without any explanation to the bank or NCLN20, Inc.

I refer to your letter dated September 27,2001, paragraph four (4) second line:" A ***portion*** of a contract's final payment is typically withheld pending review by your company and GSA."

We have reviewed our invoices and have determined that for the month of September 2001, there is no outstanding deficiency or deduction that we have been made aware. We have compensated all employees as per Department of Labor Standards.

Please send me a written response to this letter if your office has decided not to pay these invoices. Otherwise, I look forward to seeing the funds returned to my bank account as per the contract.

***<u>We do have the matter of the under billing that began in January 2001 and continued till July 2001 when corrected, with the change in Project Managers. This accounting is under review. Karim Abercrombia, Operations Manager, of NCLN20 will submit a final report and payment request, at close of business, today October 16, 2001.</u>***

However, this issue is seen by NCLN20, Inc. as a separate matter that in our view should have no bearing on the current demand for payment of services rendered per the contract as of September 1-30, 2001.

Sincerely,

Stephen Jones
CEO/ Founder
NCLN20

Cc: Nancy Camardo, Attorney Of Record, NCLN20
Inspector General David K. Stone, Chicago Field Audit Office
Ms. Martha Burch, Business Opportunity Specialist, SBA, San Francisco, CA

<u>Attachment</u>:

- (3) Invoices # 3462, 3463, & 3464 dated September 30, 2001.
- Copy of September 27, 2001 letter to NCLN20
- Copy of Citibank account print out dated 10/15/01